**PHI DELTA THETA FRATERNITY, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 88–1863.

United States Court of Appeals, Sixth Circuit.

Argued May 19, 1989.

Decided Oct. 24, 1989.

Rehearing and Rehearing En Banc Denied Jan. 3, 1990.

Barbara Schwartz Bromberg (argued), Thompson, Hine, Flory, Paxton & Seasongood, Cincinnati, Ohio, for Phi Delta Theta Fraternity.

William F. Nelson, I.R.S., Gary R. Allen, Acting Chief, William S. Rose, Robert A. Bernstein, Kenneth L. Greene (argued), U.S. Dept. of Justice, Tax Div., Washington, D.C., for C.I.R.

Before MERRITT, Chief Judge, KRUPANSKY, Circuit Judge, and ENGEL, Senior Circuit Judge.*

ENGEL, Senior Circuit Judge.

In this appeal from the United States Tax Court, 90 T.C. 1033 (1988), we consider whether income derived from a special endowment and used by a college fraternity to pay for publication of its quarterly periodical is "exempt function income" under 26 U.S.C. § 512(a)(3)(B), and thus not taxable as "unrelated business taxable income" under 26 U.S.C. §§ 512–513.

The Phi Delta Theta Fraternity ("fraternity") is a national college fraternity exempt from federal income taxation under 26 U.S.C. §§ 501(a) and 501(c)(7).[1] The fraternity's quarterly periodical, *The Scroll*, has been published since 1878; the magazine presently has a circulation of 60,000, with alumni receiving 53,000, undergraduate fraternity members receiving 5,000, and libraries and universities receiving the remaining 2,000.

Described in its masthead as an educational journal, *The Scroll* has an editorial policy of: informing its readership of developments and issues within the fraternity, providing information about the achievements of the fraternity's undergraduates and alumni, featuring prominent alumni and their accomplishments, and providing educational information about society and higher education. Articles appearing in *The Scroll* almost exclusively concern

---

* The Honorable Albert J. Engel became Senior Circuit Judge on October 1, 1989.

1. 26 U.S.C. §§ 501(a) & 501(c)(7) provide: (a) An organization described in subsection (c) ... shall be exempt from taxation ... (c)(7) Clubs organized for pleasure, recreation, and other non-profitable purposes, substantially all of the activities of which are for such purposes and no part of the net earnings of which inures to the benefit of any private shareholder.

awards received by members and achievements of alumni in business, sports, the military, education, or government. *The Scroll* occasionally publishes articles on alcoholism and drug abuse, hazing, or safety, and also includes fraternity news, obituaries of fraternity members, a listing of the fraternity's officers and staff of its national headquarters, and a list of all current chapters and their members.

During fiscal year 1978 (ending June 30, 1979), the fraternity published five issues of *The Scroll*, with publication costs being derived from an endowment called "The Scroll Fund" ("The fund"). Regulations governing the fund provide that money in the fund may be used: "first, for the payment of any necessary expenses incurred in the administration of the trustees; second, for the payment of the necessary expenses of editing, printing and publishing the periodical publications of the fraternity; and third, for the payment of any other necessary expenses of the fraternity under the laws of the fraternity as to the ordinary revenues." 90 T.C. at 1034–35.

During the fiscal year, the fund generated a net income of $114,637.00. $96,374.21 of this was spent for publication of *The Scroll*, with the remainder ($18,262.79) being retained as an asset of the fund. The fraternity did not include the $114,637 as unrelated business income on its fiscal 1978 tax return but instead treated the net income from the fund as "exempt function" income under 26 U.S.C. § 170(c)(4), thereby subtracting it from the fraternity's "unrelated business taxable income." *See* 26 U.S.C. § 512(a)(3)(A) ("unrelated business taxable income" of organization exempt from taxation under 26 U.S.C. § 501(c)(7) does not include "exempt function income").

The Commissioner of Internal Revenue subsequently assessed a tax deficiency against the fraternity, holding that the fund's entire $114,637 income, including the money spent for publication of *The Scroll*, was not "exempt function" income within the meaning of 26 U.S.C. §§ 170(c)(4) and 512. On appeal, the United States Tax Court upheld the Commissioner's ruling and entered a judgment assessing a tax deficiency of $37,608.00. After noting that a deficiency assessment is presumptively correct, the Tax Court held that money in the fund was not spent exclusively for "educational purposes," as required under 26 U.S.C. § 170(c), and therefore not exempt from taxation under *Better Business Bureau v. United States*, 326 U.S. 279, 283, 66 S.Ct. 112, 114, 90 L.Ed. 67 (1945). The Tax Court did not determine whether the money in the fund was tax-exempt because it was properly "set aside" for a tax exempt purpose under 26 U.S.C. § 512(a)(3)(B); instead, holding that the money was not spent exclusively for purposes recognized by § 170(c)(4), the Tax Court held that the net investment income of the fund was not "exempt function" income under 26 U.S.C. § 512(a)(3)(B)(i) and therefore taxable as unrelated business income. The fraternity appeals, arguing that part of *The Scroll* may be treated as furthering educational or charitable purposes, thereby making part of the net investment income of the "Scroll Fund" deductible as "exempt function income" under 26 U.S.C. § 512(a)(3). We agree with the Tax Court and affirm.

## I.

Under 26 U.S.C. § 512(a)(1), "Except as otherwise provided in this subsection, the term 'unrelated business taxable income' means the gross income derived by any organization from any unrelated trade or business (as defined in section 513) regularly carried on by it, less the deductions allowed by this chapter...."

Under § 512(a)(3):

(A) **General rule.**—In the case of an organization described in paragraph (7) ... of section 501(c), the term "unrelated business taxable income" means the gross income (excluding any exempt function income), less the deductions allowed by this chapter which are directly connected with the production of the gross income (excluding exempt function income) ...

(B) **Exempt function income.**—For purposes of subparagraph (A), the term "ex-

empt function income" means the gross income from dues, fees, charges, or similar amounts paid by members of the organization as consideration for providing such members or their dependents or guests goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which such income is paid. *Such term also means all income (other than an amount equal to the gross income derived from any unrelated trade or business regularly carried on by such organization computed as if the organization were subject to paragraph (1)) which is set aside—*

*(i) for a purpose specified in section 170(c)(4)* ... including reasonable costs of administration directly connected with a purpose described in clause (i) or (ii). If during the taxable year, an amount which is attributable to income so set aside is used for a purpose other than that described in clause (i) or (ii), such amount shall be included, under subparagraph (a), in unrelated business taxable income for the taxable year. (emphasis supplied)

Section 170(c)(4), which describes the non-profit purposes for which tax exemption is available, provides a tax exemption for certain contributions:

In the case of a contribution or gift by an individual, a domestic fraternal society, order or association, operating under the lodge system, *but only if such contribution or gift is to be used exclusively for religious, charitable, scientific, literary, or educational purposes,* or for the prevention of cruelty to children or animals. (emphasis supplied).

Given the language of sections 512(a)(3)(B) and 170, to determine whether the investment income from the "Scroll Fund" is tax-exempt as "exempt function income," two interrelated inquiries are necessary: (1) whether there was a proper "set aside" by the fraternity within the meaning of § 512(a)(3)(B); and (2) even if there was no proper "set aside," whether monies were spent on exempt purposes and nevertheless may be considered tax-ex-

empt. Initially, we consider the legislative history of § 512(a)(3)(B) and the meaning of the phrase "set aside."

### A.

The legislative history of § 512(a)(3)(B) sheds virtually no light on the "set aside" requirement. The Senate version of the Tax Reform Bill of 1969, which was ultimately passed by the Congress, *see* Conf. Rep. 91–782, *reprinted in* 1969 *U.S.Code Cong. & Admin.News* 1645, 2392, 2405, tangentially discusses the unrelated business taxable income provisions, by discussing the extension of these provisions to employee associations. However, the legislative history of this extension simply provides:

The committee amendments also extend the exemption from the investment income tax available in the House bill for fraternal beneficiary associations and employees' beneficial associations in the case of amounts they set aside or use for religious, charitable or educational purposes to the other types of organizations (the social clubs) to which the investment income tax is to apply. The committee believes that to the extent that they use their income for these charitable purposes, they too should be allowed an exemption from the tax on investment income. In extending the exemption, the committee intends in the case of national organizations of college fraternities and sororities that amounts set aside for scholarships, student loans, loans on local chapter housing, leadership and citizenship schools and services, and similar activities, be classified as amounts used for educational or charitable purposes under this provision. This exception would also extend to any other educational or charitable activities of these or other exempt organizations.

The legislative history of prior tax codes is also opaque. The only legislative history concerning the analogous 1954 Code provision relating to unrelated business taxable income states that the code section "is derived from sections 421(c), 421(d) and 422

of the 1939 Code." *See* 1954 *U.S. Code Cong. & Admin.News* 4017, 4309.

### B.

Although legislative history proves unhelpful in interpreting § 512(a)(3)(B), analogous tax regulations help to illuminate its scope. While the Tax Code and Treasury regulations do not explicitly define what constitutes a "set aside" for purposes of § 512(a)(3)(B)(i), Treasury regulations 26 C.F.R. § 1.512(a)–4(b)(5) (concerning set asides for insurance purchases by war veterans organizations) and 26 C.F.R. § 1.642(c)–2(d) (relating to estates which set aside monies for charitable purposes) shed some light on the "set aside" requirement.

26 C.F.R. § 1.512(a)–4(b)(5) provides:

**Special Rules applicable to war veterans organizations.**

(5) *Requirements for set aside.* An amount is not properly set aside if the organization commingles it with any amount which is not to be set aside. However, adequate records describing the amount set aside and indicating that it is to be used for the designated purpose are sufficient. Amounts that are set aside need not be permanently committed to such use either under state law or by contract....

26 C.F.R. § 1.642(c)–2(d) provides:

**Unlimited deduction for amounts permanently set aside for a charitable purpose.**

(d) *Disallowance of deduction for certain amounts not deemed to be permanently set aside for charitable purposes.* No amount will be considered to be permanently set aside, or to be used, for a purpose described in paragraph (a) or (b)(1) of this section unless under the terms of the governing instrument and the circumstances of the particular case the possibility that the amount set aside, or to be used, will not be devoted to such purpose or use is so remote as to be negligible.

26 C.F.R. § 1.642(c)–2(a)(1) and (b)(1)(i), referenced in this regulation, allow a deduction for monies which are *"permanently set aside during the taxable year for a purpose specified in section 170(c)"* (emphasis supplied).

■ These two regulations thus lay out two tests which may be used in determining whether money is properly "set aside" for income tax purposes. First, a fund is properly "set aside" if "the organization [does not] commingle[ ] it with any amount which is not to be set aside. However, adequate records describing the amount set aside and indicating that it is to be used for the designated purpose are sufficient." 26 C.F.R. § 1.512(a)–4(b)(5). Second, under 26 C.F.R. § 1.642(c)–2(d), funds are properly set aside if "under ... the circumstances of the particular case the possibility that the amount set aside, or to be used, will not be devoted to such purpose or use is so remote as to be negligible."

■ Under the "no commingling" test, there is not a proper set aside here, because the money in the fund is available not only for *The Scroll* but also for "payment of any necessary expenses incurred in the administration of the trustees" and "for the payment of any other necessary expenses of the fraternity under the laws of the fraternity as to the ordinary revenues." Money available for publication of *The Scroll* is therefore commingled with other funds, and therefore not properly set aside.

Furthermore, under the "negligible possibility that the funds will not be used for the exempt purpose" test, it is also apparent that the "Scroll Fund" is not properly set aside: given the rules governing the use of the "Scroll Fund," the possibility that the fund would be used for nonpublication purposes is certainly not negligible.

Under the terms of § 512(a)(3)(B), which requires a set aside, then, the fraternity has failed to demonstrate that it is entitled to the exemption it seeks. The fraternity has not properly set aside a fund, the income of which may be considered "exempt function income."

### II.

Although the fraternity has not properly set aside funds, it nevertheless argues that

any income from the fund actually spent on tax-exempt purposes should be considered "exempt function income." The fraternity maintains that money spent on the educational portions of *The Scroll* should still be considered "exempt function income," based upon the percentage of the publication which is devoted to education. We reject this contention.

■ The interplay of the plain language of § 512(a)(3)(B)—which requires that monies be set aside for a purpose recognized in § 170—and § 170(c)(4)—which requires that exempt funds be spent exclusively for tax-exempt purposes—appears to indicate that investment income may be considered "exempt function income" only where money is both set aside exclusively for tax-exempt purposes *and* used exclusively for religious, charitable, scientific, literary, or educational purposes.

This interpretation is consistent with case law which demands that an organization be exclusively devoted to a tax-exempt purpose before it may receive tax-exempt status. In *Better Business Bureau v. United States*, 326 U.S. 279, 283, 66 S.Ct. 112, 114, 90 L.Ed. 67 (1945), for example, the Supreme Court ruled that to qualify for tax exemption, an organization must be devoted exclusively to a tax-exempt purpose and the presence of a single non-exempt purpose destroys exemption regardless of exempt purposes served by organization. *See also Hutchinson Baseball Enterprises, Inc. v. Commissioner*, 696 F.2d 757 (10th Cir.1982).

The fraternity's interpretation of the unrelated business income provisions would nullify the wording of § 512(a)(3), which requires that tax-exempt monies actually be "set aside" before they may be considered "exempt function income." Under the terms of § 512(a)(3), "exempt function income" is defined as money which is *set aside* for a tax-exempt purpose: it is not defined as money which is *actually spent* on a tax-exempt purpose. Clearly, the "set aside" requirement is designed to promote adequate tracing and application of the "exempt function income" rules. Without such a requirement, before the Commis-

sioner would be able to determine whether money from a fund is being spent on a tax-exempt function, she would have to evaluate every dollar in any particular fund which funds allegedly tax-exempt activities. This prevents an exemption for the fraternity, where the fund, as noted above, while used almost exclusively for the publication of *The Scroll*, may be used for any number of purposes, including payment of the general fraternity expenses.

■ Section 512(a)(3)(B), however, does allow reasonable costs actually spent in administering a tax-exempt activity to be included in "exempt function income." Given the negative implication of this "administrative cost" provision, then, it is urged that the fraternity may deduct any money actually spent on tax-exempt purposes. However, we interpret this provision as peculiarly limited to expenses outside a specific fund which are actually used to administer the fund: the taxpayer must still have appropriately set aside a fund for a tax-exempt purpose. It has not done so here.

Further support for the fraternity's position lies in the fact that § 512(a)(3)(B) indicates that the Commissioner may differentiate between money set aside, and that which is ultimately not spent on an exempt activity, thereby requiring evaluation of money actually spent on tax-exempt purposes: "If during the taxable year, an amount which is attributable to income so set aside is used for a purpose other than that described in clause (i) [a purpose defined in § 170(c)(4) ] ... such amount shall be included ... in unrelated business taxable income for the taxable year." Thus, the fraternity asserts that it is entitled to a holding that part of its fund was used for tax-exempt purposes, and that its taxes should be determined accordingly. Nevertheless, this argument also presupposes that money has initially been set aside for a tax-exempt purpose, which did not occur here; therefore, this type of evaluation by the Commissioner, if available, appears available only *after* the organization has made a proper set aside within the meaning of § 512(a)(3)(B).

Failure of a proper set aside, coupled with the finding that *The Scroll* is not published exclusively for tax-exempt purposes, thus indicates that the income from the "Scroll Fund" is taxable as unrelated business income.

### III.

■ The fraternity cites several private letter rulings to support its position that the Commissioner is required to differentiate between those funds which are spent on exempt functions and those which are not. Although private letter rulings are helpful in determining the contours of tax statutes and may be considered when evaluating the consistency of application of statutes, such letter rulings have no precedential effect. *See Rowan Companies, Inc. v. United States*, 452 U.S. 247, 261 n. 17, 101 S.Ct. 2288, 2296 n. 17, 68 L.Ed.2d 814 (1981) ("... these rulings have no precedential force ..."); 26 U.S.C. § 6110(j)(3).[2]

The fraternity cites Private Letter Ruling 8133025 as authority for the proposition that it is entitled to a deduction for money actually spent on a tax-exempt purpose. We read this letter, however, as indicating that once a specific fund is set aside, the charitable or educational *purposes* of the entire fund must be evaluated, with any fund losing exemption if there is a substantial non-exempt purpose. *See Better Business Bureau, supra.* We do not read the letter so broadly as to hold that the Commissioner must independently evaluate every *activity* embraced by a fund and allow exemption for every qualifying *activity*, but rather as a requirement that the nature of the fund as a whole be evaluated. To hold otherwise would require an analysis of every dollar spent by the fraternity from a general fund and determination of a corresponding percentage of exemption under § 170(c)(4), a painstaking and nearly impossible task subject always to

quibbling by the taxpayer. As noted above, the intent of the set aside requirement is that the Commissioner need only look at the fund, not every activity undertaken by the exempt organization.

We thus conclude that 26 U.S.C. § 512(a)(3)(B) demands that a fund such as the "Scroll Fund" be established exclusively for a tax-exempt purpose, and that the money in the fund be exclusively set aside for that purpose before it is non-taxable as "exempt function income." The fraternity having failed properly to set aside such funds, no money from the "Scroll Fund" is deductible from the fraternity's "unrelated business taxable income."

The judgment of the United States Tax Court is AFFIRMED.

MERRITT, Chief Judge, dissenting.

In this tax case, the *Phi Delta Theta* fraternity has adequate records showing precisely how much money was spent or "set aside" during fiscal 1978 for publication of its national alumni magazine, *The Scroll:* $96,374.21. The remaining income ($18,262.79) from *The Scroll Fund* or *Trust* was not spent at all that year. There is no contention that money from the *Trust* not spent or "set aside" for *The Scroll* in 1978, or any other year for that matter, was spent or "set aside" for non-tax-exempt purposes.

Under these circumstances it seems to me that *The Scroll Fund* or *Trust* is "set aside" for publication of the magazine and other tax-exempt purposes and the $96,374 in publication expense was "set aside" for the magazine. There is no evidence that any funds from the *Trust* have been used for anything other than the magazine and other exempt fraternal purposes. Thus the money used was "set aside" by any reasonable meaning of that purpose.

**2.** Private Letter Ruling 8616003, which never reveals the actual identity of the party, bears a remarkable resemblance to the case at hand. In the ruling, the Commissioner discusses the tax implications for a fraternity which uses "the y fund" as a fund for production of its fraternity periodical. This letter ruling held that edu-

cational articles in the publication only served an "incidental purpose" of the publication and that the "articles only comprise an insubstantial part of each publication of y." Accordingly, the I.R.S. held that "y is not published for educational, charitable or any other purpose within the meaning of 170(c)(4) of the code."

The magazine itself simply carries news about the fraternity, its local chapters and its alumni, as well as articles on subjects of general concern. It is no different in this respect from hundreds of college alumni magazines across the country which receive tax-exempt treatment because they fit within the definition of § 170(c)(4), which requires that the publication funds be "used exclusively for ... literary or educational purposes."

After reading the Court's opinion and the tax law carefully several times, I do not yet understand why the Court believes the money used for the magazine is not "set aside" for "literary or educational" purposes. Accordingly, I dissent.