Samuel P. Hunt Trust v. USA          CV-02-375-JD   12/30/03
            UNITED STATES DISTRICT COURT FOR THE
                  DISTRICT OF NEW HAMPSHIRE


Samuel P. Hunt Trust F/B/O
Mary C. Russell, by its Trustee,
Citizens Bank, NH, and
Samuel P. Hunt Trust F/B/O
Elizabeth Marston, by its Trustee,
Citizens Bank, NH

     v.                                Civil No. 02-375-JD
                                       Opinion No. 2003 DNH 223
United States of America


                          O R D E R

     The plaintiffs, two Samuel P. Hunt Trusts, bring suit

through their Trustee, Citizens Bank, NH, to recover taxes paid

on capital gains received in 1993 and 1996, together with

interest, contending that the gains were exempt as permanently

set aside for the Samuel P. Hunt Foundation, within the

requirements of 16 U.S.C. § 642(c)(2).  The government asserts

that because the trust instrument, Samuel P. Hunt's will ("the

Will"), gave the trustees broad powers to designate income and

principal, the gains in question do not qualify as exempt under §

642(c)(2).  Both the plaintiffs and the government have moved for

summary judgment on an essentially undisputed factual record.

## Background

Samuel P. Hunt executed his last will and testament on September 19, 1951. Among other dispositions, Hunt established three testamentary trusts, one for each of his nieces, Mary Russell, Elizabeth Marston, and Constance McWhinney, and their respective issue. The nieces and their issue were income beneficiaries of their trusts. Hunt named Merchants National Bank and Ralph A. McIninch as the trustees. Citizens Bank is the successor to Merchants and became the sole trustee of the two remaining trusts when McIninch died in 1993.[1]

At the same time that he executed the Will, Hunt created the Samuel P. Hunt Foundation, a well-known New Hampshire charitable organization, which received a tax exempt ruling from the Internal Revenue Service ("IRS") in 1953. The Foundation is the remainder beneficiary of the testamentary trusts. The same trustees served as trustees of the Foundation. Therefore, at present, Citizens is the only trustee of the Foundation, as well as of the testamentary trusts, and is referred to in this order as "Trustee."

---

[1]Only the Samuel P. Hunt Trust F/B/O Mary C. Russell ("Russell Trust") and the Samuel P. Hunt Trust F/B/O Elizabeth Marston ("Marston Trust") are plaintiffs because Ms. McWhinney died without issue in 1980, and the Foundation received the principal from her trust at that time.

2

Hunt died on August 14, 1958. In 1960, each of the three testamentary trusts was funded with a corpus of $354,222.11. In Articles 6 and 7, the Will provided for distribution of Trust income to the beneficiaries of each Trust. The Will also granted the trustees "the broadest possible powers effectively to carry out [Samuel Hunt's] purposes as herein expressed, and without limiting their general application, such powers shall include, among other things, the right, in their sole discretion . . . [t]o decide what is income and what is principal." Pl. Ex. A, Will at Art. 9(s).

During the lifetime of the Trusts and up to the present, the Trustee always has allocated all capital gains to the principal of each trust and has made no distribution of principal to any income beneficiary of the Trusts. The Trustee is required to and does file probate accounts with and is subject to the supervision of the Director of Charitable Trusts, New Hampshire Office of the Attorney General. The Director has never investigated or questioned the Trustee's administration of the trusts.

The Trustee filed federal income tax returns for the Trusts from 1960 to the present. Except for 1996, 1997, and 1998, the Trustee deducted capital gains earned by the trusts from taxable income, based on the Trustee's understanding that capital gains earned by the Trusts were permanently assigned to principal. The

IRS disallowed the capital gains deduction for 1993, because of the Trustee's discretion to elect whether to allocate capital gains as income or principal. The IRS did not audit the Trusts' 1994 and 1995 returns, when the Trusts took the same deductions. In the returns filed in 1996 through 1998, the Trustee did not take the deduction for capital gains earned but instead later filed amended returns claiming the deductions and requesting refunds. The IRS allowed the deductions and issued refunds for 1997 and 1998 but refused the requested refund for 1996.

On April 5, 1999, the IRS made assessments of $309,745 against the Marston Trust and $302,231 against the Russell Trust for taxes owed on the disallowed 1993 deduction. The IRS also assessed interest. In amended returns for 1996, the Trustee claimed charitable deductions of $102,716 and $260,354.

## Discussion

The Trustee filed suit to recover the taxes and interest the Trusts paid for the IRS assessment on the 1993 returns and the amount paid but then claimed as a deduction in the amended 1996 returns. Both the government and the Trustee have moved for summary judgment.

4

I.  Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Ordinarily when parties file cross-motions for summary judgment, the court must consider the motions separately. Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002).  This is because in considering cross motions, the court must separately draw factual inferences against each movant in turn.  Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).  Here, however, the parties' dispute raises a legal issue, the interpretation of the trust instrument and the application of 26 U.S.C. § 642 to the undisputed facts of this case, rather than

5

a factual question.[2]  See In re Pack Monadnock, 147 N.H. 419, 423 (2002); In re Clayton J. Richardson Trust, 138 N.H. 1, 3 (1993). Therefore, because factual inferences are not at issue, the motions need not be considered separately.  Philip Morris Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997).

The Trusts do not identify the legal basis for their cause of action claiming refunds.  The government asserts that the suit is a civil action for a refund pursuant to 26 U.S.C. § 7422(a), and the Trusts do not dispute that characterization of their claim.  The Trusts, therefore, bear the burden of showing that the IRS's assessments in 1993 and 1996 were erroneous under 26 U.S.C. § 642.  Quijano v. United States, 93 F.3d 26, 28 n.1 (1st Cir. 1996).

II.  Application of Section 642

Section 642(c)(2) provides that certain trusts, including the Trusts at issue here, are "allowed as a deduction in computing [their] taxable income any amount of the gross income, without limitation, which pursuant to the terms of the governing instrument is, during the taxable year, permanently set aside for

_____

[2]In contrast, the duties of a trustee are determined based upon the intentions of the trust settlor, and the issue of the settlor's intentions is factual not legal.  See Bartlett v. Dumaine, 128 N.H. 497, 404-05 (1986).

a purpose specified in section 170(c) . . . ." The Will names the Foundation as the remainder beneficiary of the Trusts, and this purpose qualifies under § 642(c). The question raised in this case is whether the capital gain income was permanently set aside for that purpose as is required by § 642(c). IRS regulation, 26 C.F.R. § 1.642(c)-2(d) explains that "[n]o amount will be considered to be permanently set aside . . . unless under the terms of the governing instrument and the circumstances of the particular case the possibility that the amount set aside . . . will not be devoted to such purpose . . . is so remote as to be negligible."

The government argues that the capital gain income realized by the Trusts in 1993 and 1996 was not permanently set aside for purposes of § 642(c) because of the Trustee's discretionary authority to elect whether to allocate such income as Trust principal or Trust income under Article 9(s) of the Will. The government contends that even if such income were allocated to principal it could later be used for non-charitable purposes under provisions in the Will. The Trustee argues that because the Will does not permit it to invade principal on behalf of the income beneficiaries or to distribute capital gain income to the beneficiaries after it has been allocated to principal, the capital gain income earned in 1993 and 1996 and allocated to

7

principal was permanently set aside within the meaning of § 642. The Trustee also argues that capital gains are required by law to be allocated to principal so that the government's interpretation of the Will to allow allocation to income is contrary to the governing standards.

IRS Revenue Ruling 73-95 examined the effect on a charitable contribution deduction under § 642 of a trustee's discretionary authority to allocate capital gains between income and principal.[3]  1973 WL 33646.  The IRS concluded that when gains were set aside as principal under such discretionary authority, they were not permanently set aside because later discretionary allocations of gains as income at times when the trust also suffered losses could diminish gain previously set aside as principal.  Such allocations would diminish the amount that was previously available to charity.  As a result, Revenue Ruling 73-95 held that if "a trustee has discretionary power under the will to allocate gains from the sale or other disposition of property constituting principal either to principal or to income, any amount the trustee elects to set aside will not qualify for a

_____

[3]Revenue Rulings that reflect the IRS's longstanding and reasonable interpretation of its own regulations are entitled to deference.  See United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 220 (2001).  The Trusts distinguish Revenue Ruling 73-95 on its facts, but do not argue that it is not entitled to deference.

8

deduction under section 642(c) of the Code since it has not been permanently set aside for a charitable purpose." Id.

The Trustee contends that Revenue Ruling 73-95 does not apply to this case because the trustee there exercised his discretionary power to allocate capital gain to income which has not happened in this case. Revenue Ruling 73-95, however, is based on the trustee's power under the trust instrument to elect and the governing law which permitted the trustee to allocate capital gain to income, rather than principal. That is consistent with § 1.642(c)-2(d) which requires that the possibility that the amount set aside would not be used for charitable purposes be negligible. See, e.g., Phi Delta Theta Fraternity v. Comm'r of Internal Revenue, 887 F.2d 1302, 1306 (6th Cir. 1989). Therefore, the fact that the trustee discussed in Revenue Ruling 73-95 exercised that power is not a material distinction from the circumstances of this case.

The Trustee also contends that unlike the circumstances in Revenue Ruling 73-95, it is barred from exercising its discretion to elect to allocate capital gain to income under New Hampshire law and more specifically under Massachusetts law. The Trustee first points to certain tenets of trust administration in Austin W. Scott, The Law of Trusts Vol. 11 § 236.14 p. 1322 (1939), discussing the law of Pennsylvania and Massachusetts. While the

9

cited part of the section in Scott on <u>Trusts</u> might be persuasive in the proper context, it does not appear to be relevant to New Hampshire law as it exists or existed at the time in question.

The Trustee also contends that the version of Rule 49 of the New Hampshire Rules of Practice and Procedure in the Probate Courts applicable in 1993 and 1996 would not permit allocation of capital gains to income and that the same principle is also supported by case law.[4]  The Trustee is apparently relying on Rule 49(A)(4) (1996) which required that "[g]ains and losses on disposition of property shall be netted and reported with receipts of principal" for probate court accounts.  That accounting requirement, which is for reporting fiduciary accounts to the probate court, does not necessarily prevent a trustee from exercising discretionary power provided in a trust instrument.

The Trustee cites <u>In re LaTour Estate</u>, 110 N.H. 49 (1969), to show that New Hampshire adopted a rule that capital gains from mutual funds must be allocated to principal.  In that case, however, the trust instrument "contain[ed] no provision expressly or impliedly which would control the capital gains distributions from mutual funds."  <u>Id.</u> at 51.  The Will in this case does include a provision that allows the Trustee to decide what is

---

[4]The Probate Rules were amended in 2001.

10

income and what is principal.[5]  The Trustee does not dispute that New Hampshire law has shown a particular "regard for the intention of the settlor of a trust."  Indian Head Nat'l Bank v. Rawls, 105 N.H. 142, 144 (1963).  Therefore, the holding in LaTour is inapposite.  Page v. D'Amours, 99 N.H. 441, 443 (1955), cited by the Trustee, is also inapposite as it states only a general proposition that taxes on capital gains would be paid from principal.  Cf. LaTour, 110 N.H. at 52 (noting no New Hampshire decision on issue of whether distributions from capital gains were income or principal).

The government notes that other parts of Article 9 of the Will could also affect the principal that would be available to the Foundation.  Specifically, part (t) allows the trustees to "make a distinction between principal and income and to deal with them separately or otherwise, if, at any time, such distinction appears to them to be necessary or desirable."  Part (f) provides that the trustees may "charge to income or to principal or partly to each, as the trustees shall deem to be appropriate" listed expenses and costs including "obligations and liabilities of

---

[5]Although that provision, Article 9 at part (s), does not specifically mention capital gains, given the broad grant of power that prefaces Article 9, part (s) would include the authority to decide whether capital gains should be allocated to income or principal.

11

every kind that may become due from or on account of the trust estate or of any part thereof incidental to the execution of these trusts, including a reasonable compensation to the trustees for their services."  Part (j) allows the trustees to buy or sell "bonds, notes, debentures, or other obligations, either at a premium above or at a discount from the face value or par value thereof, (1) to credit or charge the amount of such premium or discount to either income or principal or partly to each, in such proportions as they shall determine . . . " and to make other determinations as to the premium or discount.[6]  These further broad discretionary powers undermine the eligibility of the deduction under § 642 because they also provide means by which the principal might not be permanently set aside for charitable purposes.

Perhaps realizing the lack of applicable authority to support its theory under New Hampshire law, the Trustee relies heavily on precedent established by the Massachusetts Supreme Judicial Court.  In <u>Old Colony Trust Co. v. Silliman</u>, 223 N.E.2d

---

[6]The Trustee argues that the specificity of parts (j) and (n), which deal with particular kinds of dispositions and allocation between principal and income means that part (s) could not have granted general authority to make the same allocation but instead demonstrates that part (s) was merely a savings clause for dealing with circumstances not otherwise covered by rules of trust administration.  The court finds no inconsistency or unnecessary redundancy in the cited provisions.

12

504 (Mass. 1967), the executors and trustee under the will of Amelia Silliman sought direction as to the power of the trustee pursuant to an article that allowed the trustee to "decide whether accretions to the trust property shall be charged to principal or income and whether expenses shall be charged to principal or income."[7] Id. at 505. The will provided that at the end of the individual income interests, the principal of the trust would be transferred by the trustee to charitable purposes. Id. at 505-06. Because of the eventual charitable purposes, the executors had claimed a charitable deduction on their federal tax return which was disallowed. Id. at 506.

The court determined that the intent of the will, taken as a whole, was that "the entire principal of the trust go eventually to charity," and that "[t]his intent will not be effectuated if the trustee can substitute for established rules its decision made in good faith as to what to do as between principal and income." Id. at 507. In light of that intent, the court concluded that "even very broad discretionary powers are to be exercised in accordance with fiduciary standards and with reasonable regard for usual fiduciary principles." Id. The court held that the general power could not be used to favor

_____

[7]The Trustee in this case apparently has not attempted to gain direction from the New Hampshire courts on this issue.

13

either the charitable interests or the private beneficiaries so that the trustee and executors were to apply known and established rules to compute the present value of the charitable remainder.  Id. at 508.  In summary, "under Massachusetts law, a trustee is restricted in the exercise of even broad discretionary powers by the terms of the trust viewed as a whole, and by the trustee's fiduciary duty to use his or her best judgment in good faith."  Markham v. Fay, 74 F.3d 1347, 1358 (1st Cir. 1996).

Even if the restrictions found in Old Colony were pertinent under the terms of the Will in this case and if this court were to conclude that the New Hampshire Supreme Court would follow the Massachusetts rule, such a result would not affect the present tax dispute.  It is undisputed that at the time in question, 1993 and thereafter, New Hampshire law did not clearly prohibit the Trustee from exercising the broad discretion granted in the Will without limitations.  As such, the possibility that the Trustee could exercise its discretionary power in a way that could change the designation of capital gain from a charitable purpose to another purpose was not so remote as to be negligible under New Hampshire law.  Therefore, the court need not decide whether New Hampshire would now follow Massachusetts precedent.[8]

---

[8]The court also need not analyze the federal cases cited that apply Massachusetts law.

14

III. Equitable Considerations

The Trustee also argues that justice and equity support allowing the charitable deduction to preserve the principal available for the Foundation, and, in particular, because the IRS did not apply its taxing scheme uniformly. The Trustee cites no authority to support a theory that the court may order a tax deduction based on justice and equity. To the extent the Trustee is suggesting a theory of equitable estoppel against the IRS, it has not adequately presented such an argument. See, e.g., Morgan v. C.I.R., 345 F.3d 563, 566-67 (8th Cir. 2003); Fredericks v. C.I.R., 126 F.3d 433, 447-48 (3d Cir. 1997). The Trustee has not carried its burden of showing that the IRS assessments in 1993 and 1996 were erroneous under § 642.

Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 18) is granted. The plaintiffs' motion for summary judgment (document no. 13) is denied. The plaintiffs' claim to recover taxes paid is denied.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

December 30, 2003
cc: Thomas P. Cole, Esquire
    Wilbur A. Glahn III, Esquire

15