115 T.C. No. 33


UNITED STATES TAX COURT


SHERWIN-WILLIAMS COMPANY EMPLOYEE HEALTH PLAN TRUST, KEY TRUST
COMPANY OF OHIO, TRUSTEE, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No.  21333-97.                    Filed November 9, 2000.


        Trust (T), a tax-exempt voluntary employees'
beneficiary association described in sec. 501(c)(9),
I.R.C., set aside for each year at issue a certain
amount of investment income to provide for the payment
of reasonable costs of administration directly con-
nected with providing for the payment of health care
benefits (amount of investment income at issue).

        Held:  In determining for each year at issue the
unrelated business taxable income (UBTI) of T under
sec. 512(a)(3)(A), I.R.C., the amount of investment
income at issue is subject to the limitation prescribed
by sec. 512(a)(3)(E)(i), I.R.C.  Held, further, in
calculating for each year at issue the limitation
prescribed by sec. 512(a)(3)(E)(i), I.R.C., the amount
of assets that T set aside to provide for the payment
of health care benefits, including reasonable costs of
administration directly connected with providing for
the payment of such benefits, is not to be reduced by

the amount of the reserve described in sec. 419A(c)(2)(A), I.R.C., for post-retirement medical benefits.  Held, further, because of the limitation prescribed by sec. 512(a)(3)(E)(i), I.R.C., in determining for each year at issue the UBTI of T under sec. 512(a)(3)(A), I.R.C., the amount of investment income at issue may not be excluded as exempt function income.

Michael T. Cummins and Robert K. Olson, for petitioner.

Mark L. Hulse, for respondent.

OPINION[1]

CHIECHI, Judge:  Respondent determined the following deficiencies in the Federal income tax (tax) of The Sherwin-Williams Company Employee Health Plan Trust (Trust):

| Year | Deficiency |
|------|-----------|
| 1991 | $489,941 |
| 1992 | 339,924 |

The issues for decision are:

(1)  In determining for each year at issue the unrelated business taxable income (UBTI) of the Trust under section 512(a)(3)(A),[2] is the amount of investment income that the Trust

---

[1]Unless otherwise indicated, our Opinion pertains to 1991 and 1992, the years at issue.

[2]All section references are to the Internal Revenue Code (Code) in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

set aside[3] to provide for the payment of reasonable costs of administration directly connected with providing for the payment of health care benefits subject to the limitation prescribed by section 512(a)(3)(E)(i)?  We hold that it is.

(2)  In calculating for each year at issue the limitation prescribed by section 512(a)(3)(E)(i), is the amount of assets that the Trust set aside to provide for the payment of health care benefits, including reasonable costs of administration directly connected with providing for the payment of such benefits, to be reduced by the amount of the reserve described in section 419A(c)(2)(A) for post-retirement medical benefits (reserve for post-retirement medical benefits)?  We hold that it is not.

## Background

This case was submitted fully stipulated.  The facts that have been stipulated are so found except as stated herein.

At the time of the filing of the petition, the Trust's address was in care of its trustee, Key Trust Company of Ohio, N.A. (Trustee), in Cleveland, Ohio.

On December 30, 1987, The Sherwin-Williams Company (Sherwin-Williams) established the Trust to fund health care benefits for participants in The Sherwin-Williams health care plan (Sherwin-

---

[3]All references herein to an amount set aside are to an amount set aside within the meaning of sec. 512(a)(3)(B).

Williams health care plan participants). On September 27, 1988, the Commissioner of Internal Revenue determined that the Trust was exempt from tax because it qualified as a voluntary employees' beneficiary association described in section 501(c)(9). The Trust maintained that qualification during the years at issue. (We shall refer to a tax-exempt voluntary employees' beneficiary association described in section 501(c)(9) as a VEBA.)

The Trust agreement establishing the Trust provided in pertinent part:

> 8.2 <u>Payment of Benefits</u>. * * * Any Trust Fund income not used in the year in which it was earned to provide life, sickness, accident or other benefits described in Section 501(c)(9) of the Code and the regulations thereunder or to pay reasonable administrative costs associated with the delivery of those benefits shall be set aside to provide for the payment of the benefits and benefit costs described in Section 512(a)(3)(B)(ii) of the Code and limited by Section 512(a)(3)(E) of the Code in the immediately following year. * * *

The Trust derived its income from (1) member contributions from Sherwin-Williams and Sherwin-Williams health care plan participants and (2) investment income. The Trust set aside, and subsequently expended, income to provide for the payment of health care benefits and reasonable costs of administration directly connected with providing for the payment of such benefits. The amounts of income that the Trust set aside to provide for the payment of reasonable costs of administration directly connected with providing for the payment of health care benefits

equaled $1,580,455 for 1991 and $1,853,529 for 1992.[4]

The amounts of assets that the Trust set aside as of the close of the years at issue to provide for the payment of health care benefits and reasonable costs of administration directly connected with providing for the payment of such benefits were $41,975,366 and $45,637,659, respectively.

The Trust's account limit, as defined in section 419A(c), for its qualified asset account, as defined in section 419A(a), was $64,615,936[5] for 1991 and $84,192,933 for 1992. The forego- ing account limits for 1991 and 1992 included $53,313,236 and $71,602,395, respectively, attributable to a reserve for post- retirement medical benefits.

The Trust filed Forms 990, Return of Organization Exempt From Income Tax (Form 990), and Forms 990-T, Exempt Organization Business Income Tax Return (Form 990-T), in which it reported as unrelated business income $1,851,399 and $1,155,793 of investment

---

[4]The costs for 1992 ($1,853,529) were paid first from in- vestment income for that year.

[5]The parties stipulated that the Trust's account limit for 1991, as defined in sec. 419A(c), was $65,652,991. However, that stipulation is contrary to the record in this case. The record establishes, and we have found, that that account limit was $64,615,936. We may, and we shall in this instance, disregard a stipulation between the parties where the stipulation is clearly contrary to the facts established by the record. See Cal-Maine Foods, Inc. v. Commissioner, 93 T.C. 181, 195 (1989).

income for 1991 and 1992, respectively.[6]  In its Forms 990-T for 1991 and 1992, the Trust claimed as deductions directly connected with its unrelated business income (1) "Compensation of officers, directors, and trustees" in the amounts of $1,456,954 and $1,618,779, respectively, and (2) "Other deductions" in the amounts of $156,084 and $287,450, respectively.  Of the foregoing total deductions claimed in the Trust's Forms 990-T for 1991 and 1992, $1,580,455 and $1,853,529, respectively, constitute reasonable costs of administration directly connected with providing for the payment of health care benefits for which the Trust set aside income within the meaning of section 512(a)(3)(B).[7]

The instructions to Forms 990-T stated in pertinent part:

> Sections 501(c)(7), (9), (17), and (20) organizations will not be taxed on income set aside for:
>
> 1. Religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals;
>
> 2. The payment of life, sick, accident, or other benefits by a section 501(c)(9), (17), or (20) organization.  The amount allowed as a set-aside may not exceed a limit determined using section 419A.  See sections 419A and 512(a)(3)(E) for details;
>
> 3. Reasonable administration costs directly connected with 1 and 2 above.

---

[6]The Trust reported in Forms 990 additional investment income of $232,202 and $405,095 for 1991 and 1992, respectively, which the Trust did not treat as unrelated business income in those forms or in Forms 990-T for those years.

[7]See _supra_ note 4.

In the notice of deficiency (notice) issued to the Trust, respondent determined that, in calculating its UBTI, the Trust erroneously deducted in Forms 990-T for 1991 and 1992 (1) $1,424,371 and $1,588,555, respectively, as "Compensation of officers, directors, and trustees" and (2) $156,084 and $264,974, respectively, as "Other deductions". Respondent made those determinations because the Trust failed to establish that those disallowed amounts constitute expenses directly related to, and therefore deductible from, its investment income that it reported as unrelated business income in Forms 990-T (i.e., $1,851,399 for 1991 and $1,155,793 for 1992).[8]

## Discussion

On brief, the Trustee abandons the position that the Trust took in Forms 990-T for 1991 and 1992 that, in calculating its UBTI, it is entitled to deduct from unrelated business gross income (1) "Compensation of officers, directors, and trustees" in the amounts of $1,456,954 and $1,618,779, respectively, and (2) "Other deductions" in the amounts of $156,084 and $287,450, respectively. Instead, the Trustee argues on brief that $1,580,455 of the Trust's income for 1991[9] and $1,853,529 of the

_____

[8]Respondent made no determinations in the notice regarding the amounts of unrelated business income that the Trust reported in Forms 990-T for the years at issue.

[9]The Trustee makes no argument about the balance of the investment income (i.e., $270,944) that the Trust reported as
(continued...)

Trust's income for 1992[10] constitute exempt function income, as defined in section 512(a)(3)(B), and that such amounts of income are excluded from the calculation of its UBTI under section 512(a)(3)(A). It is respondent's position that, because of the limitation prescribed by section 512(a)(3)(E)(i), the amounts of investment income that the Trust reported as unrelated business income in Forms 990-T for the years at issue are not excluded from the calculation of the Trust's UBTI.[11] Petitioner bears the

---

[9](...continued) unrelated business income in its Form 990-T for 1991. We find that petitioner has failed to show that such remaining amount of investment income for 1991 (1) constitutes exempt function income, as defined in sec. 512(a)(3)(B), or (2) otherwise is not subject to the tax on UBTI imposed by sec. 511(a).

[10]On brief, the Trustee acknowledges that for 1992 not only its investment income but also certain of its other income was set aside, and subsequently expended, for $1,853,529 of reasonable costs of administration directly connected with providing for the payment of health care benefits. The Trustee further acknowledges that it reported in Form 990-T for 1992 only $1,155,793 of its investment income for that year as unrelated business income. Respondent made no determination in the notice that the Trust's remaining investment income for 1992 (i.e., $405,095), which the Trust did not treat as unrelated business income in Form 990 and Form 990-T for that year, should be included in calculating the Trust's UBTI for that year. We conclude that the only amount of the Trust's income for 1992 that is at issue in this case is $1,155,793 of investment income that the Trust reported as unrelated business income in Form 990 and Form 990-T for that year. Our references hereinafter to the amount at issue for 1992 shall be to the correct amount at issue for 1992, and not to the amount (i.e., $1,853,529) that the Trustee claims on brief is at issue for that year.

[11]Respondent also advances arguments on brief as to why respondent's determinations in the notice should be sustained. However, as noted above, the Trustee no longer contests those
(continued...)

burden of establishing that its position is correct.  See Rule

142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

Before addressing the issues presented, we set forth the

pertinent statutory provisions implicated by those issues.[12]

Although section 501(a) exempts a VEBA from tax, section 501(b)

subjects a tax-exempt VEBA to tax to the extent provided in

sections 511 through 515 relating to the tax on UBTI.  Section

511(a) imposes a tax for each taxable year on the UBTI of a VEBA,

as defined in section 512.

Section 512(a)(1) provides the following general definition

of UBTI:

> (1) General rule.--Except as otherwise provided in
> this subsection, the term "unrelated business taxable
> income" means the gross income derived by any organiza-
> tion from any unrelated trade or business (as defined
> in section 513) regularly carried on by it, less the
> deductions allowed by this chapter which are directly
> connected with the carrying on of such trade or busi-
> ness, both computed with the modifications provided in
> subsection (b).

Section 512(a)(3) provides the following special rules in

defining the UBTI of a VEBA described in section 501(c)(9):

> (3) Special rules applicable to organizations
> described in paragraph (7), (9), (17), or (20) of
> section 501(c).--

---

[11](...continued)
determinations.

[12]Although the statutory provisions set forth below apply
not only to a VEBA but also to certain other organizations, our
discussion generally is limited to the application of those
provisions to a VEBA.

(A) General rule.--In the case of an organization described in paragraph (7), (9), (17), or (20) of section 501(c), the term "unrelated business taxable income" means the gross income (excluding any exempt function income), less the deductions allowed by this chapter which are directly connected with the production of the gross income (excluding exempt function income) * * *.

(B) Exempt function income.--For purposes of subparagraph (A), the term "exempt function income" means the gross income from dues, fees, charges, or similar amounts paid by members of the organization as consideration for providing such members or their dependents or guests goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which such income is paid. Such term also means all income (other than an amount equal to the gross income derived from any unrelated trade or business regularly carried on by such organization computed as if the organization were subject to paragraph (1)), which is set aside—-

    (i) for a purpose specified in section 170(c)(4), or

    (ii) in the case of an organization described in paragraph (9) * * * of section 501(c), to provide for the payment of life, sick, accident, or other benefits,

including reasonable costs of administration directly connected with a purpose described in clause (i) or (ii).  If during the taxable year, an amount which is attributable to income so set aside is used for a purpose other than that described in clause (i) or (ii), such amount shall be included, under subparagraph (A), in unrelated business taxable income for the taxable year.

    *    *    *    *    *    *    *

(E) Limitation on amount of setaside in the case of organizations described in paragraph (9) * * * of section 501(c).--

(i) In general.--In the case of any organization described in paragraph (9) * * * of section 501(c), a set-aside for any purpose specified in clause (ii) of subparagraph (B) may be taken into account under subparagraph (B) only to the extent that such set-aside does not result in an amount of assets set aside for such purpose in excess of the account limit determined under section 419A (without regard to subsection (f)(6) thereof) for the taxable year (not taking into account any reserve described in section 419A(c)(2)(A) for post-retirement medical benefits).

The Trust as a VEBA that is funded by, inter alia, employer contributions is subject to sections 419[13] and 419A. Section 419A(a) provides:

SEC. 419A. QUALIFIED ASSET ACCOUNT; LIMITATION ON ADDITIONS TO ACCOUNT.

(a) General Rule.--For purposes of this subpart and section 512, the term "qualified asset account" means any account consisting of assets set aside to provide for the payment of--

*     *     *     *     *     *     *

(2) medical benefits * * *

Section 419A(c) imposes an account limit on the Trust's qualified asset account, as defined in section 419A(a). Section

---

[13]Sec. 419 prescribes rules governing the deductibility of contributions paid or accrued by an employer to a welfare benefit fund. The amount of such a deduction allowable under sec. 419 is determined by reference to, inter alia, any addition to a qualified asset account determined under sec. 419A(b). Sec. 419A(b) provides that no addition to any qualified asset account may be taken into account for purposes of sec. 419 to the extent such addition results in the amount in such account exceeding the account limit, as defined in sec. 419A(c).

419A(c) provides:

> SEC. 419A. QUALIFIED ASSET ACCOUNT; LIMITATION ON
> ADDITIONS TO ACCOUNT.
>
> (c) Account Limit.--For purposes of this section--
>
>     (1) In general.--Except as otherwise provided in
> this subsection, the account limit for any qualified
> asset account for any taxable year is the amount rea-
> sonably and actuarially necessary to fund--
>
>         (A) claims incurred but unpaid (as of the
>     close of such taxable year) for benefits referred
>     to in subsection (a), and
>
>         (B) administrative costs with respect to such
>     claims.
>
>     (2) Additional reserve for post-retirement medical
> and life insurance benefits.--The account limit for any
> taxable year may include a reserve funded over the
> working lives of the covered employees and actuarially
> determined on a level basis (using assumptions that are
> reasonable in the aggregate) as necessary for--
>
>         (A) post-retirement medical benefits to be
>     provided to covered employees (determined on the
>     basis of current medical costs) * * *

We turn now to the initial dispute between the parties over whether, in determining for each year at issue the Trust's UBTI under section 512(a)(3)(A), the amount of investment income at issue that the Trust set aside (i.e., $1,580,455 for 1991 and $1,155,793 for 1992[14]) to provide for the payment of reasonable costs of administration directly connected with providing for the payment of health care benefits is subject to the limitation prescribed by section 512(a)(3)(E)(i). It is the position of the

_____

[14]See _supra_ notes 4, 8, and 10.

Trustee that that amount of investment income for each year at issue is not subject to that limitation. That position rests upon the contentions of the Trustee that the plain language of section 512(a)(3)(B) identifies four independent sources or components of exempt function income and that one of those sources or components of exempt function income is reasonable costs of administration directly connected with a purpose described in section 512(a)(3)(B)(i) or (ii). The Trustee posits that the four sources of exempt function income identified by section 512(a)(3)(B) are:

(1) amounts paid by members of the association as consideration for goods, facilities, or services;

(2) amounts set aside for a charitable purpose;

(3) amounts set aside for the payment of life, sick, accident, or other benefits; and

(4) reasonable costs of administration directly connected with components 2 and 3.

According to the Trustee, "It is apparent from the plain language of the statute [section 512(a)(3)(B)] that reasonable costs of administration are an independent basis of Exempt Function Income."

Proceeding from its premises that reasonable costs of administration directly connected with a purpose described in section 512(a)(3)(B)(i) or (ii) are one of the four independent sources or components of exempt function income under section 512(a)(3)(B), the Trustee argues that the limitation in section

512(a)(3)(E)(i) is "plainly restricted to only set-asides for the payment of benefits described in I.R.C. §512(a)(3)(B)(ii), and thus, its application does not extend to Exempt Function Income arising from member contributions, set-asides for charitable purposes, or administrative costs."

Respondent counters that reasonable costs of administration directly connected with a purpose described in section 512(a)(3)(B)(i) or (ii) do not constitute an independent source or component of exempt function income under section 512(a)(3)(B).  In support of that position, respondent argues:

> It is clear the statute [section 512(a)(3)(B)] is written so that the reasonable cost of administration phrase did not have to be written twice, that is once after clause (i) and again after clause (ii).  This is a common drafting technique used throughout the Internal Revenue Code. * * *

> Another way of describing exempt function income is income set-aside [sic] for a purpose specified in section 170(c)(4) including administrative costs directly connected with this purpose or, in the case of an organization described in paragraph (9), (17), or (20) of section 501(c), to provide for the payment of life, sick, accident, or other benefits, including reasonable costs of administration directly connected with this purpose.  This is the clear meaning of this section [512(a)(3)(B)].  Accordingly, administrative costs are a part of the benefit costs which may be set-aside [sic] under clauses (i) and (ii) of I.R.C. § 512(a)(3)(B), not a separate component thereof.

We first address the premises of the Trustee's position under section 512(a)(3)(E)(i), namely, its contentions that the plain language of section 512(a)(3)(B) identifies four sources or components of exempt function income and that one of those

sources or components of exempt function income is reasonable costs of administration directly connected with a purpose described in section 512(a)(3)(B)(i) or (ii).  While we agree with the Trustee that the language of section 512(a)(3)(B) is unambiguous, we conclude that the plain language of section 512(a)(3)(B) rejects the Trustee's contentions.

Section 512(a)(3)(B) unambiguously defines the term "exempt function income" to mean gross income from two sources only. Moreover, section 512(a)(3)(B) plainly does not treat reasonable costs of administration directly connected with a purpose described in section 512(a)(3)(B)(i) or (ii) as income or as a source or component of income.

The first source of gross income from which exempt function income may be derived is specified in the first sentence of section 512(a)(3)(B) as "gross income from dues, fees, charges, or similar amounts paid by members of the organization".  However, in order to qualify as exempt function income, such gross income specified in the first sentence of section 512(a)(3)(B) must be paid by the organization's members "as consideration for providing such members or their dependents or guests goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which such income is paid."

The second source of gross income from which exempt function

income may be derived is specified in the second sentence of section 512(a)(3)(B) as all other income (except an amount equal to the gross income derived from any unrelated trade or business[15] regularly carried on by such organization and computed as if the organization were subject to section 512(a)(1)). (For convenience, we shall sometimes refer to the second source of exempt function income specified in the second sentence of section 512(a)(3)(B) as non-member income.) However, in order to qualify as exempt function income, such non-member income specified in the second sentence of section 512(a)(3)(B) must be set aside for a purpose described in section 512(a)(3)(B)(i) or (ii), including reasonable costs of administration directly connected with any such purpose.

The phrase that appears at the end of the second sentence of section 512(a)(3)(B), i.e., "including reasonable costs of administration directly connected with a purpose described in clause (i) or (ii)", unambiguously pertains to and modifies both section 512(a)(3)(B)(i) and (ii). That phrase plainly treats non-member income (1) set aside to provide for the payment of reasonable costs of administration directly connected with a purpose described in section 512(a)(3)(B)(i) as set aside for a

---

[15]Sec. 513(a) defines the term "unrelated trade or business" to mean, in general, any trade or business of the tax-exempt organization the conduct of which is not substantially related to the exercise or performance by such organization of its exempt purposes.

purpose described in that section and (2) set aside to provide for the payment of reasonable costs of administration directly connected with a purpose described in section 512(a)(3)(B)(ii) as set aside for a purpose described in that section.[16]

To support its position that reasonable costs of administration directly connected with a purpose described in section 512(a)(3)(B)(i) or (ii) qualify as one of the four independent sources or components of exempt function income under section 512(a)(3)(B), the Trustee relies not only on the language of section 512(a)(3)(B), but also on the following statement in Phi Delta Theta Fraternity v. Commissioner, 887 F.2d 1302, 1307 (6th Cir. 1989), affg. 90 T.C. 1033 (1988): "Section 512(a)(3)(B), however, does allow reasonable costs actually spent in administering a tax-exempt activity to be included in 'exempt function income.'" We find the Trustee's reliance on that statement to be misplaced. The United States Court of Appeals for the Sixth

---

[16]We need not resort to the legislative history of sec. 512(a)(3)(B) to determine the meaning of the phrase in question that appears at the end of the second sentence of that section. That is because the terms of that statutory provision are unambiguous, and there are no exceptional circumstances warranting our turning to that legislative history for guidance. See Burlington N. R.R. Co. v. Oklahoma Tax Commn., 481 U.S. 454, 461 (1987); Fernandez v. Commissioner, 114 T.C. 324, 329-330 (2000). Nonetheless, it is noteworthy that, consistent with its plain language, the legislative history of sec. 512(a)(3)(B) provides that income will be treated as set aside for benefits specified in that section where it is set aside and used not only for the payment of those benefits but also for the payment of reasonable costs of administration of providing those benefits. See S. Rept. 91-552 (1969), at 72, 1969-3 C.B. 470.

Circuit (Court of Appeals), the Court to which an appeal in the instant case would normally lie, did not decide in Phi Delta Theta Fraternity the issues under section 512(a)(3) that are presented here.[17]   Moreover, the foregoing statement in Phi Delta Theta Fraternity on which the Trustee relies in the instant case is dictum.  Finally, even if the statement in Phi Delta Theta Fraternity were not dictum, we do not find that that

---

[17]The taxpayer in Phi Delta Theta Fraternity v. Commissioner, 887 F.2d 1302 (6th Cir. 1989), affg. 90 T.C. 1033 (1988), was a national college fraternity (fraternity) that was exempt from tax as an organization described in sec. 501(c)(7).  The ultimate issue before the Court of Appeals was whether the investment income of the fraternity qualified as exempt function income for purposes of sec. 512(a)(3)(A) and (B).  In resolving that issue, the Court considered two questions:  (1) Whether there was a proper set aside by the fraternity within the meaning of sec. 512(a)(3)(B); and (2) even if there was no proper set aside within the meaning of that section, whether the fraternity spent income on exempt purposes, and, if it did, whether that income therefore qualified as exempt function income.  Although those questions are not presented here, it is noteworthy that in resolving those matters the Court of Appeals in Phi Delta Theta Fraternity quoted portions of sec. 512(a)(3)(B) as applicable to the sec. 501(c)(7) fraternity involved in that case, as follows:

> Such term [exempt function income] also means all income * * * which is set aside--
>
> (i) for a purpose specified in section 170(c)(4) * * * including reasonable costs of administration directly connected with a purpose described in clause (i) or (ii). * * *

Phi Delta Theta Fraternity v. Commissioner, supra at 1305.  Thus, the Court of Appeals recognized in Phi Delta Theta Fraternity that the phrase "including reasonable costs of administration directly connected with a purpose described in clause (i) or (ii)" does not stand alone, but pertains to and modifies sec. 512(a)(3)(B)(i) as well as sec. 512(a)(3)(B)(ii).

statement supports the Trustee's position here that one of the four independent sources or components of exempt function income under section 512(a)(3)(B) is reasonable costs of administration directly connected with a purpose described in section 512(a)(3)(B)(i) or (ii).

In further support of its position that reasonable costs of administration directly connected with a purpose described in section 512(a)(3)(B)(i) or (ii) qualify as one of the four independent sources or components of exempt function income under section 512(a)(3)(B), the Trustee relies on the instructions to Forms 990-T for the years at issue.  Those instructions provided in pertinent part:

> Sections 501(c)(7), (9), (17), and (20) organizations will not be taxed on income set aside for:
>
> 1. Religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals;
>
> 2. The payment of life, sick, accident, or other benefits by a section 501(c)(9), (17), or (20) organization.  The amount allowed as a set-aside may not exceed a limit determined using section 419A.  See sections 419A and 512(a)(3)(E) for details;
>
> 3. Reasonable administration costs directly connected with 1 and 2 above.

We acknowledge that the foregoing instructions to Forms 990-T are not as clearly stated as section 512(a)(3)(B) is.  Nonetheless, we find those instructions to be consistent with the plain language of section 512(a)(3)(B).  We have held that section

512(a)(3)(B) plainly treats non-member income set aside for reasonable costs of administration directly connected (1) with a purpose described in section 512(a)(B)(3)(i) as set aside for a purpose described in that section and (2) with a purpose described in section 512(a)(3)(B)(ii) as set aside for a purpose described in that section.

In any event, we are not bound by the instructions to Forms 990-T for the years at issue. The authoritative sources of tax law are statutes, regulations, and judicial decisions, and not informal instructions published by the Internal Revenue Service. See Casa de La Jolla Park, Inc. v. Commissioner, 94 T.C. 384, 396 (1990). We find the Trustee's reliance on the instructions to Forms 990-T for the years at issue to be misplaced.

We hold that section 512(a)(3)(B) treats non-member income set aside to provide for the payment of reasonable costs of administration directly connected with a purpose described in section 512(a)(3)(B)(ii) as non-member income set aside for a purpose described in section 512(a)(3(B)(ii).

The Trustee's contentions that section 512(a)(3)(B) identifies four independent sources or components of exempt function income and that one of those sources or components is reasonable costs of administration directly connected with a purpose described in section 512(a)(3)(B)(i) or (ii) constitute the premises on which the Trustee constructs its argument that non-

member investment income set aside by the Trust for the payment of reasonable costs of administration directly connected with a purpose described in section 512(a)(3)(B)(ii) is not subject to the limitation prescribed by section 512(a)(3)(E)(i).  We have rejected those contentions, and therefore those premises are not valid.  We further reject the Trustee's argument that the limitation prescribed by section 512(a)(3)(E)(i) does not apply to the non-member investment income at issue that the Trust set aside to provide for the payment of reasonable costs of administration directly connected with a purpose described in section 512(a)(3)(B)(ii).[18]

As a VEBA described in section 501(c)(9), a set-aside by the Trust of non-member income for a purpose described in section 512(a)(3)(B)(ii) is to be taken into account as exempt function income under section 512(a)(3)(B) only to the extent that such

---

[18]It is noteworthy that the Trust agreement establishing the Trust provided that such costs are subject to the limitation prescribed by sec. 512(a)(3)(E)(i).  That Trust agreement provided in pertinent part:

> 8.2  Payment of Benefits. * * * Any Trust Fund income not used in the year in which it was earned to provide life, sickness, accident or other benefits described in Section 501(c)(9) of the Code and the regulations thereunder or to pay reasonable administrative costs associated with the delivery of those benefits shall be set aside to provide for the payment of the benefits and benefit costs described in Section 512(a)(3)(B)(ii) of the Code and limited by Section 512(a)(3)(E) of the Code in the immediately following year. * * *  [Emphasis added.]

set aside does not exceed the limitation prescribed by section 512(a)(3)(E)(i). See sec. 512(a)(3)(E)(i). We have held that the plain language of section 512(a)(3)(B) treats non-member income set aside to provide for the payment of reasonable costs of administration directly connected with a purpose described in section 512(a)(3)(B)(ii) as set aside for a purpose described in that section. We further hold that "a set-aside for any purpose specified in clause (ii) of subparagraph (B)" of section 512(a)(3) to which the limitation prescribed by section 512(a)(3)(E)(i) applies is a set-aside to provide for the payment of life, sick, accident, or other benefits and reasonable costs of administration directly connected with providing for the payment of such benefits. We also hold that the limitation prescribed by section 512(a)(3)(E)(i) applies to the amounts of non-member income at issue that the Trust set aside to provide for the payment of reasonable costs of administration directly connected with providing for the payment of health care benefits.

The Trustee advances an alternative argument in the event that the Court were to hold, as we have, that the limitation prescribed by section 512(a)(3)(E)(i) applies to the amounts of non-member income at issue. According to the Trustee's alternative argument, in calculating for each year at issue the limitation prescribed by section 512(a)(3)(E)(i), the plain language of that section requires that not only the Trust's account limit

determined under section 419A, but also the amount of assets set aside by the Trust, be reduced by the amount of the reserve for post-retirement medical benefits described in section 419A(c)(2)(A).

The parties agree that (1) the Trust's respective account limits, determined under section 419A(c), were $64,615,936 and $84,192,933 for 1991 and 1992; (2) those account limits for those years included $53,313,236 and $71,602,395, respectively, attributable to a reserve for post-retirement medical benefits; (3) the amounts of assets that the Trust set aside (i.e., the total asset balances reported by the Trust in Forms 990) for 1991 and 1992 were $41,975,366 and $45,637,659, respectively; and (4) (a) for 1991 $7,342,383 and $34,632,983 of the amount of assets so set aside were allocable to (i) incurred but unpaid health benefit claims and reasonable costs directly connected with such claims and (ii) the reserve for post-retirement medical benefits, respectively, and (b) for 1992 $6,824,833 and $38,812,826 of the amount of assets so set aside were allocable to (i) incurred but unpaid health benefit claims and reasonable costs directly connected with such claims and (ii) the reserve for post-retirement medical benefits, respectively. If the limitation prescribed by section 512(a)(3)(E)(i) were to be calculated in the manner advocated by the Trustee, the amount of assets set aside by the Trust as of the close of each year at issue would not

exceed that limitation.  In that event, the amount of investment income at issue that the Trust set aside to provide for the payment of reasonable costs of administration directly connected with providing for the payment of health care benefits would constitute exempt function income that is excluded under section 512(a)(3)(A) from the calculation of the Trust's UBTI.

It is the position of respondent that, in calculating for each year at issue the limitation prescribed by section 512(a)(3)(E)(i), only the account limit determined under section 419A, and not the amount of assets set aside by the Trust, must be reduced by the reserve for post-retirement medical benefits described in section 419A(c)(2)(A).

Although we have quoted section 512(a)(3)(E)(i) above, for convenience we restate it here in addressing the contentions of the parties with respect to the Trustee's alternative argument. Section 512(a)(3)(E)(i) provides:

> (E) Limitation on amount of setaside in the case of organizations described in paragraph (9), (17), or (20) of section 501(c).--
>
> > (i) In general.--In the case of any organiza-tion described in paragraph (9), (17), or (20) of section 501(c), a set-aside for any purpose speci-fied in clause (ii) of subparagraph (B) may be taken into account under subparagraph (B) only to the extent that such set-aside does not result in an amount of assets set aside for such purpose in excess of the account limit determined under sec-tion 419A (without regard to subsection (f)(6) thereof) for the taxable year (not taking into account any reserve described in section 419A(c)(2)(A) for post-retirement medical bene-

fits).

We find the Trustee's interpretation of section 512(a)(3)(E)(i) (viz., the parenthetical phrase "(not taking into account any reserve described in section 419A(c)(2)(A) for post-retirement medical benefits)" modifies both "an amount of assets set aside" and "the account limit determined under section 419A" referred to in section 512(a)(3)(E)(i)) to be a strained and unreasonable interpretation.  We reject that interpretation.  We conclude that the parenthetical phrase appearing at the end of section 512(a)(3)(E)(i), as reasonably and properly construed, modifies only "the account limit determined under section 419(A)" referred to in section 512(a)(3)(E)(i).  Our construction is supported by the temporary regulations under section 512(a)(3)(E)(i).

Section 1.512(a)-5T, Q&A-3(a), Temporary Income Tax Regs., 51 Fed. Reg. 4332 (Feb. 4, 1986), as amended by 51 Fed. Reg. 11303 (Apr. 2, 1986) (Q&A-3(a)), provides in pertinent part:

> Q-3:  What amount of income may a VEBA, SUB or GLSO set aside for exempt purposes?
>
> A-3:  (a) Pursuant to section 512(a)(3)(E)(i), the amounts set aside in a VEBA, SUB, or GLSO (including a VEBA, SUB, or GLSO that is part of a 10 or more employer plan, as defined in section 419A(f)(6)(B)) as of the close of a taxable year of such VEBA, SUB, or GLSO to provide for the payment of life, sick, accident, or other benefits may not be taken into account for purposes of determining "exempt function income" to the extent that such amounts exceed the qualified asset account limit, determined under sections 419A(c) and 419A(f)(7), for such taxable year of the VEBA, SUB, or

GLSO. <u>In calculating the qualified asset account limit for this purpose, a reserve for post-retirement medical benefits under section 419A(c)(2)(A) is not to be taken into account</u>. [Emphasis added.]

Q&A-3(a) plainly provides that, for purposes of determining the limitation prescribed by section 512(a)(3)(E)(i), a reserve for post-retirement medical benefits described in section 419A(c)(2)(A) is not to be taken into account in "calculating the qualified asset account limit". Q&A-3(a) does not indicate that, for those purposes, such a reserve is not to be taken into account in calculating the amount of assets set aside as of the close of a taxable year.

Our interpretation regarding the parenthetical phrase appearing at the end of section 512(a)(3)(E)(i) also is supported by the General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984 that was prepared by the Staff of the Joint Committee on Internal Revenue Taxation (General Explanation). Congress enacted section 512(a)(3)(E)(i) into the Code as part of the Deficit Reduction Act of 1984. See Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 511(b), 98 Stat. 860. The General Explanation provides in pertinent part with respect to section 512(a)(3)(E)(i):

> The [Deficit Reduction] Act [of 1984] provides a specific annual limit on the amount of income of a tax-exempt VEBA * * * that may be considered a permissible set aside. Under the Act, the amount of such an organization's income for a year that may be considered set aside as exempt function income is generally not to increase the total amount that is set aside to an

amount in excess of the account limit for the taxable year determined under the deduction limits provided by the Act (sec. 419A(c) and (f)). The limit on the set-aside is intended to apply to more-than-10-employer VEBAs which are exempt from the deduction limitations. * * *

In general, the rules applicable in computing the account limit under the deduction rules [section 419], such as the special reserve limits for collectively bargained plans, also are applicable in determining the set-aside allowed for purposes of the unrelated business income tax. However, for purposes of determining the limit on the set aside, <u>the account limit is not to include any amount with respect to reserves to provide post-retirement medical benefits</u>. The limit on the amount set aside as exempt function income does not include a reserve for post-retirement medical benefits because, in view of the advance deductions provided to employers for these benefits, it was determined that the allowance of such a tax-exempt reserve would provide an unnecessary tax incentive with respect to these benefits. [Footnote ref. omitted; emphasis added.]

Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 791 (J. Comm. Print 1984).

The General Explanation plainly provides that, in determining the limitation prescribed by section 512(a)(3)(E)(i), a reserve for post-retirement medical benefits is not to be taken into account in determining the account limit. The General Explanation does not indicate that, in making that determination, such a reserve is not to be taken into account in calculating the amount of assets set aside at the close of a taxable year.[19]

---

[19]If we were to accept the Trustee's alternative position that for each year at issue not only the account limit, as

(continued...)

We hold that, in calculating for each year at issue the limitation prescribed by section 512(a)(3)(E)(i), that section does not require that the amount of assets that the Trust set aside as of the close of each such year be reduced by the amount of the reserve for post-retirement medical benefits. The parties agree that for each year at issue the amount of assets that the Trust set aside to provide for the payment of health care benefits, including reasonable costs of administration directly connected with providing for the payment of such benefits, exceeded the account limit, as defined in section 419A(c), determined without regard to section 419A(f)(6) and without taking into account the reserve for post-retirement medical benefits described in section 419A(c)(2)(A). We hold that, in determining for each year at issue the UBTI of the Trust under section 512(a)(3)(A), the amount of investment income at issue that the Trust set aside to provide for the payment of reasonable costs of administration directly connected with providing for the payment of health care benefits may not be excluded as exempt

---

[19](...continued)
defined in sec. 419A(c), but also the amount of assets set aside by the Trust are to be determined without regard to the reserve for post-retirement medical benefits, we would undermine the reason set forth in the General Explanation why Congress decided to require the account limit to exclude any amount with respect to such a reserve in determining the limitation prescribed by sec. 512(a)(3)(E)(i). See Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 791 (J. Comm. Print 1984).

function income.

We have considered all of the contentions and arguments of the Trustee that are not discussed herein, and we find them to be without merit and/or irrelevant.[20]

To reflect the foregoing,

Decision will be entered for respondent.

---

[20]We shall briefly address one of those arguments.  The Trustee argues that the Trust's investment income at issue is not subject to the unrelated business income tax because the investment income of a VEBA described in sec. 501(c)(9) "is not taxable if spent in furtherance of its exempt purpose."  In support of that argument, the Trustee relies on certain legislative history of the Tax Reform Act of 1969 which enacted sec. 512(a)(3)(A) and (B) into the Code.  The Trustee's reliance on that legislative history is misplaced.  When Congress enacted sec. 512(a)(3)(A) and (B) in 1969, it placed no specific limitation on the amount of income that may be set aside by a VEBA.  See Tax Reform Act of 1969, Pub. L. 91-172, sec. 121(b), 83 Stat. 537.  However, in 1984 Congress decided to impose a limitation on the amount of income that may be set aside when it enacted sec. 512(a)(3)(E)(i) into the Code.  See Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 511(b), 98 Stat. 860; H. Conf. Rept. 98-861, at 1161-1163 (1984), 1984-3 C.B. (Vol. 2) 415-417; see also Staff of Joint Comm. on Taxation, General Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 790-791 (J. Comm. Print 1984).