# United States Court of Appeals for the Federal Circuit

2009-5025


CNG TRANSMISSION MANAGEMENT VEBA,

Plaintiff-Appellant,

v.

UNITED STATES,

Defendant-Appellee.


Eric R. Fox, Ivins, Phillips & Barker, Chartered, of Washington, DC, argued for plaintiff-appellant. With him on the brief were Kevin P. O'Brien and Patrick J. Smith.

Kenneth L. Greene, Attorney, Appellate Section, Tax Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were John A. DiCicco, Acting Assistant Attorney General, Gilbert S. Rothenberg, Acting Deputy Assistant Attorney General, and Arthur T. Catterall, Attorney.

Appealed from: United States Court of Federal Claims

Judge Lynn J. Bush

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2009-5025

CNG TRANSMISSION MANAGEMENT VEBA,

Plaintiff- Appellant,

v.

UNITED STATES,

Defendant-Appellee.

Appeal from the United States Court of Federal Claims in 06-CV-541,
Judge Lynn J. Bush.

_____

DECIDED:  December 14, 2009
_____

Before MAYER, LINN, and PROST, Circuit Judges.

MAYER, Circuit Judge.

CNG Transmission Management VEBA ("CNG") appeals the judgment of the United States Court of Federal Claims holding that a voluntary employees' beneficiary association ("VEBA") may not avoid the limitation on exempt function income in 26 U.S.C. § 512(a)(3)(E)(i) by allocating investment income to the payment of member benefits.  See CNG Transmission Mgmt. VEBA v. United States, 84 Fed. Cl. 327 (2008).  We affirm.

BACKGROUND

The relevant facts are not in dispute. CNG is a VEBA organized under section 501(c)(9) of the Internal Revenue Code. It was established by Consolidated Natural Gas Company in 1994. As an employer-funded VEBA, CNG "provid[es] for the payment of life, sick, accident, or other benefits to the members of [the] association or their dependents or designated beneficiaries." 26 U.S.C. § 501(c)(9).

At the beginning of 2000, CNG had total fund balances of $44,804,622. Over the course of the year, CNG generated $2,798,002 in investment income, received employer contributions of $12,684,454 and spent $7,429,878 on member benefits. At the end of 2000, it had total fund balances of $42,592,818.[1] In November 2001, CNG filed Internal Revenue Service Form 990-T, reporting $2,693,592[2] in unrelated business taxable income for 2000 and paying $1,065,684 in tax on this income. In 2004, however, it filed an amended Form 990-T, requesting a refund of the tax paid in 2000 on the ground that the amount it had reported as unrelated business taxable income was instead non-taxable exempt function income. Although CNG conceded that its year-end account balance exceeded the account limit specified in 26 U.S.C. § 512(a)(3)(E)(i), it contended that it was not obligated to pay tax on its investment income because it had spent that income on member benefits during the year.

_____

[1] In addition to expending funds on member benefits, CNG also transferred assets to another VEBA during 2000 and its year-end account balance reflects this transfer.

[2] CNG originally reported investment income of $2,693,592, but now asserts that its 2000 investment income was actually $2,798,002.

The Internal Revenue Service denied CNG's refund claim and the Court of Federal Claims affirmed. In granting the government's motion for summary judgment, the court noted that pursuant to the formula provided in Temporary Treasury Regulation § 1.512(a)-5T, Q&A-3 ("Treasury Regulation § 1.512(a)-5T"), a VEBA will owe tax on the lesser of its investment income and the amount by which its year-end account balance exceeds the statutory account limit. 84 Fed. Cl. at 335. The court concluded, moreover, that a VEBA could not "avoid the limitation on exempt function income in 26 U.S.C. § 512(a)(3)(E)(i) merely by allocating investment income toward the payment of welfare benefits during the course of the tax year." Id. at 338. CNG appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

DISCUSSION

We review a grant of summary judgment by the Court of Federal Claims without deference and conduct a de novo review of all questions of statutory interpretation. Consolidation Coal Co. v. United States, 528 F.3d 1344, 1347 (Fed. Cir. 2008); Old Stone Corp. v. United States, 450 F.3d 1360, 1367 (Fed. Cir. 2006). Here the only issue in dispute is the proper interpretation of 26 U.S.C. § 512(a)(3)(E)(i).

Organizations otherwise exempt from federal taxation pursuant to section 501(a) of the Internal Revenue Code are nonetheless subject to tax on their "unrelated business taxable income." 26 U.S.C. § 511(a). In the context of organizations such as VEBAs, unrelated business taxable income generally consists of all income other than "exempt function income." See id. § 512(a)(3)(B). Exempt function income is defined as:

> the gross income from dues, fees, charges, or similar amounts paid by members of the organization as consideration for providing such members

or their dependents or guests goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which such income is paid. Such term also means all income . . . which is set aside . . . to provide for the payment of life, sick, accident, or other benefits . . . .

Id.

Under this provision, there are two classes of exempt function income: (1) member contributions to the VEBA, and (2) income which is "set aside" for the payment of life, sick, accident or other member benefits. In 1984, Congress restricted the amount of income that a VEBA could exclude as exempt function income, providing that a "set-aside" for purposes of section 512(a)(3)(B) can be considered exempt function income "only to the extent that such set-aside does not result in an amount of assets set aside . . . in excess of the account limit determined under section 419A . . . for the taxable year." See 26 U.S.C. § 512(a)(3)(E)(i).[3] Pursuant to 26 U.S.C. § 419A, a VEBA's account limit is generally the amount necessary to pay for incurred but unpaid benefit claims as of the end of the year as well as certain related administrative costs. Accordingly, a VEBA's income is exempt from tax only to the extent that it does not result in a year-end account balance in excess of the amount necessary to satisfy incurred but unpaid member claims.

---

[3] In relevant part, section 512(a)(3)(E) provides:

Limitation on amount of set aside. . . . In the case of any organization described in paragraph (9), (17), or (20) of section 501(c), a set-aside for any purpose specified in [26 U.S.C. § 512(a)(3)(B)(ii)] may be taken into account under subparagraph (B) only to the extent that such set-aside does not result in an amount of assets set aside for such purpose in excess of the account limit determined under section 419A . . . for the taxable year.

The crux of the present dispute is whether CNG's investment income "result[ed] in an amount of assets set aside" in excess of the statutory account limit. See 26 U.S.C. §§ 419A(c), 512(a)(3)(E)(i). CNG argues that its investment income did not result in any account overage because it spent that income during the year on member benefits. The government, however, contends that because CNG's investment income caused its total fund balances to exceed the statutory account limit, that investment income cannot be classified as exempt function income.

We agree with the government. The language of section 512(a)(3)(E) is clear and unambiguous: it provides that income does not qualify as exempt function income if it "result[s] in" an account balance that is "in excess" of the statutory account limit. The plain meaning of the term "results in" is "causes." See Brown v. Gardner, 513 U.S. 115, 119 (1994) (concluding that the term "as a result of" can be "naturally read simply to impose the requirement of a causal connection"); Murakami v. United States, 398 F.3d 1342, 1352 (Fed. Cir. 2005) (construing the term "as a result of" to mean "as a consequence of"); Black Hills Aviation, Inc. v. United States, 34 F.3d 968, 975 (10th Cir. 1994) (concluding that the term "as a result of" is "logically interpreted to mean 'caused by'"). Here, CNG's account overage was caused by, or occurred as a consequence of, the investment income it made in 2000. Thus, under the plain meaning of section 512(a)(3)(E)(i) that investment income was not tax-exempt.

We reject CNG's argument that its investment income could not have resulted in any account overage because it "spent" all of its investment income on member benefits during the course of the tax year. Money is fungible, and CNG cannot avoid taxation by claiming that it spent money from investment income, rather than money from some

other source, on member benefits. There is no requirement in section 512(a)(3)(E)(i) that a VEBA's investment income can result in a year-end account overage only to the extent that the actual dollars in the account at year end are directly traceable to income made on investments.

The legislative history of section 512(a)(3)(E)(i) supports this interpretation of the statutory language. The impetus for Congress' enactment of changes to the tax treatment of funded welfare benefit plans was its concern about the "tax-shelter potential" of such plans. H.R. Rep. No. 98-432, pt. 2, at 1275 (1984). Specifically, Congress feared that "the combination of advance deductions for contributions and the availability of tax exemption for certain employee benefit organizations (such as the voluntary employees' beneficiary association or VEBA) provides tax treatment very similar to that provided to qualified pension plans, but with far fewer restrictions." Id. It therefore enacted sections 419 and 419A to limit the extent to which a VEBA could deduct employer contributions and enacted section 512(a)(3)(E) to limit the extent to which a VEBA could set aside income on a tax-free basis. See id. at 1292 ("Present law does not specifically limit the amount of income that can be set aside" by a VEBA on a tax-exempt basis.); H.R. Rep. No. 98-861, at 1163 (1984) (Congress intended to impose "more specific limits" on VEBAs in order to ensure that "the amount set aside for an exempt purpose is generally not to exceed the qualified asset account limit."). Under CNG's interpretation of section 512(a)(3)(E)(i), however, a VEBA could avoid tax on its investment income simply by asserting that it had spent this income—rather than income from employee and employer contributions—on member benefits during the relevant tax year.

I.  Treasury Regulation § 1.512(a)-5T

We find the language of section 512(a)(3)(E)(i) to be unambiguous, but even if it were not, we would be compelled to accord deference to the Treasury's reasonable interpretation of the statute.  See Am. Express Co. v. United States, 262 F.3d 1376, 1383 (Fed. Cir. 2001) ("In the context of tax cases, the IRS's reasonable interpretations of its own regulations and procedures are entitled to particular deference."); LTV Steel Co. v. United States, 215 F.3d 1275, 1279 (Fed. Cir. 2000) ("When a term in the Internal Revenue Code is ambiguous, but is defined in a Treasury Regulation, we are instructed to defer to the Treasury Regulation as long as its interpretation of the Code is reasonable."); see also Cottage Sav. Ass'n v. Comm'r, 499 U.S. 554, 560-61 (1991) ("Because Congress has delegated to the Commissioner the power to promulgate all needful rules and regulations for the enforcement of [the Internal Revenue Code], we must defer to his regulatory interpretations of the Code so long as they are reasonable." (citations and internal quotation marks omitted)).  Soon after section 512(a)(3)(E)(i) was enacted, the agency issued Treasury Regulation § 1.512(a)-5T, which clarifies how much income a VEBA may set aside on a tax-free basis.  Under this provision, a VEBA's unrelated business taxable income will generally "equal the lesser" of "the income of the VEBA" and "the excess of the total amount set aside as of the close of the taxable year . . . over the qualified asset account limit."  26 C.F.R. § 1.512(a)-5T.  In other words, a VEBA will pay tax on the lesser of: (1) its investment income, and (2) the amount by which its set aside exceeds the statutory account limit.[4]  The formula

---

[4]  Since Treasury Regulation § 1.512(a)-5T imposes tax on the lesser of a VEBA's investment income and its excess total set aside over the applicable account limit, CNG may have been able to shield its investment income from tax if it had

contained in Treasury Regulation § 1.512(a)-5T does not provide for the allocation of income from a particular source to a particular expense. Thus, under this formula, a VEBA may not avoid taxation on its investment income by allocating that income to the payment of member benefits during the tax year.

On appeal, CNG argues that Treasury Regulation § 1.512(a)-5T is procedurally and substantively invalid under the Administrative Procedure Act ("APA"). See 5 U.S.C. §§ 553, 706. Because CNG did not properly raise this argument at the trial court, however, we decline to consider it here. See 84 Fed. Cl. at 335 n.5 ("For the first time at oral argument, [CNG] suggested that [Treasury Regulation § 1.512(a)-5T was] 'clearly invalid.' This argument is untimely and waived." (citations omitted)); see also Singleton v. Wulff, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); Rentrop v. Spectranetics Corp., 550 F.3d 1112, 1117 (Fed. Cir. 2008) (noting that "appellate courts do not consider a party's new theories, lodged first on appeal" (citations and internal quotation marks omitted)). Indeed, when it was before the Court of Federal Claims,

---

established that the amount by which its total set aside exceeded the account limit was less than its investment income. CNG, however, failed to present any evidence regarding the amount by which its set aside exceeded the statutory limit. As the Court of Federal Claims explained:

> [CNG] has conceded that it exceeded the account limit for its qualified asset account at the end of 2000. Because there has been an excess over the account limit described in 26 U.S.C. § 419A(c), [CNG's unrelated business taxable income] would be the lesser of CNG's investment income, or CNG's excess over the account limit . . . . [CNG] has chosen, however, to not put in any evidence of the amount of its excess over the account limit . . . for the 2000 tax year.

84 Fed. Cl. at 338 (citations omitted).

CNG affirmatively relied on Treasury Regulation § 1.512(a)-5T to support its argument that its investment income was exempt from tax. See 84 Fed. Cl. at 335.

## II. Section 419 and Sherwin-Williams

In an effort to avoid the plain language of section 512(a)(3)(E)(i) and Treasury Regulation § 1.512(a)-5T, CNG argues that 26 U.S.C. § 419 contains an "ordering rule" which should be applied to section 512(a)(3)(E)(i). According to CNG, section 419 treats a VEBA's investment income as the first source of funds to pay current member benefits and this same rule should be extended to section 512(a)(3)(E)(i).

We find this argument unpersuasive. As a preliminary matter, section 419(c) is prefaced by the phrase "[f]or purposes of this section" and there is nothing to indicate that section 419's alleged ordering rule should be applied to section 512. Furthermore, sections 419 and 512 were enacted to deal with two fundamentally different problems. While the former addresses the problem of excessive employer deductions for contributions to a VEBA, the latter addresses the problem of allowing a VEBA to generate excessive tax-free income. Section 419 limits the extent to which an employer can deduct contributions to a VEBA by limiting the deduction to the VEBA's "qualified cost" for the year.[5] See 26 U.S.C. § 419. Nowhere, however, does it indicate that in determining the amount of tax-exempt set aside available under section 512(a)(3)(E)(i), investment income must be the first source used to pay member benefits.

---

[5] Pursuant to section 419, a VEBA's "qualified cost" generally equals amounts expended on benefits plus any "addition" to the VEBA for the year, to the extent that such addition does not result in an account balance in excess of the account limit specified in section 419A. A VEBA's qualified cost is then reduced by its after-tax income. See 26 U.S.C. § 419(c).

We likewise reject CNG's argument based on Sherwin-Williams Co. Employee Health Plan Trust v. Comm'r, 330 F.3d 449 (6th Cir. 2003). That case is clearly distinguishable on its facts, because the parties there stipulated that the investment income at issue had been spent on administrative costs. See id. at 452 ("This case requires us to determine whether passive income that [a VEBA] set aside and actually spent on administrative costs during the year counts against § 512(a)(3)(E)'s limit."); id. at 454 ("The parties agree that [the VEBA's] investment income . . . was set aside and spent on administrative costs directly connected with the provision of benefits."). Here, however, there has not been an equivalent stipulation. To the contrary, the pivotal issue before us is whether a VEBA can avoid taxation by purporting to spend income from investments, rather than income from some other source, in providing member benefits.

We disagree, moreover, with the Sixth Circuit's conclusion that section 512(a)(3)(E)(i) imposes a limit on a VEBA's "accumulated funds" rather than its set-aside funds. See Sherwin-Williams, 330 F.3d at 454 ("The question presented here is whether the limit is meant to cap the total amount of income that a VEBA may set aside under § 512(a)(3)(B) over the course of a year, or whether it acts as a cap only on the amount of income that the VEBA may accumulate, by setting aside an amount in excess of the amount needed to cover the costs of administration during the course of a year."). As the Court of Federal Claims correctly noted, "[t]he term 'accumulated' appears nowhere" in section 512(a)(3)(E). 84 Fed. Cl. at 337. By its plain terms, section 512(a)(3)(E) applies to amounts "set aside" to pay for welfare benefits, not to amounts "accumulated" after expenses have been paid. See 26 U.S.C. § 512(a)(3)(B) (defining "exempt function income" as income which is "set aside . . . for the payment of

life, sick, accident, or other benefits"); id. § 512(a)(3)(E)(i) (providing that a "set aside" will be tax exempt only "to the extent that such set-aside does not result in an amount of assets set aside . . . in excess of the account limit determined under section 419A"). Furthermore, in analyzing section 512(a)(3)(E), the Sixth Circuit did not take account of the formula contained in Treasury Regulation § 1.512(a)-5T, which, as we have said, imposes tax on the lesser of a VEBA's investment income and its excess over statutory account limits, regardless of whether income is spent on member benefits during the year.

## CONCLUSION

Accordingly, the judgment of the Court of Federal Claims is affirmed.

<u>AFFIRMED</u>