**NORTHROP CORPORATION EMPLOY-
EE INSURANCE BENEFIT PLANS
MASTER TRUST, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 08–23 T.**

United States Court of Federal Claims.

June 28, 2011.

Eric R. Fox, Washington, DC, for plaintiff. Patrick J. Smith, Washington, DC, of counsel.

Jason Bergmann, United States Department of Justice Tax Division, with whom were John A. DiCicco, Principal Deputy Assistant Attorney General, Stephen I. Frahm, Chief, Court of Federal Claims Section, G. Robson Stewart, Assistant Chief, Washington, DC, for defendant.

## OPINION

BUSH, Judge.

This tax refund suit is before the court on cross-motions for summary judgment under Rule 56 of the Rules of the United States Court of Federal Claims (RCFC).[1] Although oral argument was requested by plaintiff, the pure question of law that is dispositive of plaintiff's claims was thoroughly discussed in the briefs submitted by the parties. Oral argument was thus deemed unnecessary. For the reasons given below, plaintiff's motion is denied and defendant's motion is granted.

## BACKGROUND

### I. Procedural History

This case was stayed pending the disposition of another tax refund case presenting the same issue, *i.e.,* the proper interpretation of 26 U.S.C. § 512(a)(3) (2006), a provision of the Internal Revenue Code (Code). That case was decided in favor of the government in 2008. *CNG Transmission Mgmt. VEBA v. United States,* 84 Fed.Cl. 327 (2008) (*CNG I*). Upon appeal, the United States Court of Appeals for the Federal Circuit affirmed. *CNG Transmission Mgmt. VEBA v. United States,* 588 F.3d 1376 (Fed.Cir.2009) (*CNG II*). The plaintiff in *CNG I* (and the appellant in *CNG II*), hereinafter "CNG," was represented by the counsel for plaintiff in the instant case.

According to plaintiff in this case, CNG, after being denied rehearing *en banc* on January 29, 2010, "decided against" filing a petition for a writ of certiorari to challenge the result in *CNG II*. Joint Status Report of February 24, 2010 (JSR) ¶¶ 9–10. Nonetheless, "[p]laintiff believes that both this court and the appeals court improperly decided the *CNG* case, at least in part because both courts refused to consider CNG's argument that a regulation which the defendant relied

---

1. Plaintiff's electronically-filed proposed findings of uncontroverted fact (Pl.'s Facts) are missing page ten, which contains paragraphs 49–51. These paragraphs can be referenced in defendant's response to plaintiff's facts (Def.'s Resp. to Pl.'s Facts).

on to support its position was invalid." *Id.* ¶ 11. The "invalid regulation" argument was rejected, because "both courts held that this argument was not raised in a timely manner in the lower court." *Id.* Plaintiff acknowledges that "its likelihood of success in either this court or in the court of appeals is slim," but "now wants the opportunity to present to this court and to the appeals court the argument that was not previously considered, and also intends to make clear its position that the two earlier decisions were erroneous for other reasons as well." *Id.* ¶¶ 12–13. In essence, plaintiff apparently wishes to present a full record to this court, and to the Federal Circuit, so that the United States Supreme Court could eventually consider any and all of plaintiff's arguments against the interpretation of 26 U.S.C. § 512(a)(3) adopted by the Federal Circuit in *CNG II.*[2] *See* JSR ¶ 13 (noting that "plaintiff fully intends to seek a writ of certiorari if that becomes appropriate"). The court turns to a discussion of the issues presented and decided by *CNG I* and *CNG II.*

## A. *CNG I*

### 1. VEBA Tax Issue

CNG is a voluntary employees' beneficiary association (VEBA), organized under § 501(c)(9) of the Code. *CNG I,* 84 Fed.Cl. at 328; *see also* 26 U.S.C. § 501(c)(9) (2006). Pursuant to § 501(c)(9), an employer-funded VEBA "provid[es] for the payment of life, sick, accident, or other benefits to the members of such association or their dependents or designated beneficiaries." *Id.* A VEBA maintains certain set-aside funds to provide these benefits, known as welfare benefits, to its members. *See* 26 U.S.C. § 419A(a) (2006). Typically, the members of an employer-funded VEBA are the active employees and retirees of a sponsoring corporation. *See, e.g., Gen. Signal Corp. v. Comm'r,* 142 F.3d 546, 547 (2d Cir.1998) (describing the sponsoring corporation's establishment of a VEBA "exclusively to provide welfare benefits to active and retired employees [of that corporation] and their dependents").

As a 501(c)(9) organization, CNG is tax-exempt. *See* 26 U.S.C. § 501(a) (2006). Nonetheless, even a tax-exempt VEBA must pay tax on unrelated business taxable income (UBTI). *See id.* §§ 501(b), 511–512 (2006). The dispute before the court was whether CNG was due a refund for taxes it paid on UBTI for the 2000 tax year. *CNG I,* 84 Fed.Cl. at 328.

CNG's basic contention before this court was that it paid tax on erroneously-reported UBTI in the amount of approximately $2,700,000, because that investment income should have been excluded as exempt income within the meaning of 26 U.S.C. § 512(a)(3)(A)–(B). *CNG I,* 84 Fed.Cl. at 328. CNG thus sought a refund of approximately $1,000,000, plus interest. *Id.* CNG had expended over $7,500,000 on benefits for its members in 2000, the tax year in question. *Id.* at 329.

### 2. Relevant Statutes

CNG argued that various provisions of the Code excluded its investment income from UBTI, and therefore, CNG reasoned that it owed no tax on UBTI for 2000. Defendant disagreed with plaintiff's reading of the Code. The court in *CNG I* discussed the relevant Code provisions, 84 Fed.Cl. at 329–30, and for ease of reference, that discussion is reproduced here in slightly modified form.

For 501(c)(9) organizations, UBTI generally consists of "gross income (excluding any exempt function income), less the deductions ... which are directly connected with the production of the gross income (excluding exempt function income)." 26 U.S.C. § 512(a)(3)(A). A VEBA may thus exclude "exempt function income" from its UBTI. *Id.* The category of excludable income known as exempt function income is defined in § 512(a)(3)(B), which states in relevant part:

> "exempt function income" means the gross income from dues, fees, charges, or similar amounts paid by members of the organization as consideration for providing such members or their dependents or guests goods, facilities, or services in furtherance of the purposes constituting the basis for the exemption of the organization to which

---

**2.** Although the Federal Circuit in *CNG II* affirmed *CNG I,* the circuit court's interpretation of the Code differed from this court's reading of the same provisions in *CNG I.*

such income is paid. Such term also means all income ... which is set aside—

. . . .

(ii) in the case of an organization described in paragraph (9), (17), or (20) of section 501(c), to provide for the payment of life, sick, accident, or other benefits, including reasonable costs of administration directly connected with a purpose described in clause (i) or (ii).

26 U.S.C. § 512(a)(3)(B).

Two sentences in § 512(a)(3)(B) identify two pertinent categories of exempt function income: the first sentence refers to member contributions; the second sentence refers to income which is set aside for the members' welfare benefits. *See id.* In the case of CNG, all income was set aside for the members' welfare benefits (and related administration costs), so all of CNG's income fit into the second category. Some of CNG's income fit into both categories—member contributions and set-aside funds. The investment income which was at the heart of the dispute in *CNG I* was passive investment income, which only fit into the second category of exempt function income, *i.e.*, income set aside for the welfare benefits of CNG's members and their dependents.

In 1984, Congress restricted the amount of income that a VEBA could exclude as "exempt function income." *See* Tax Reform Act of 1984, Pub L. No. 98–369, Title V, § 511, 98 Stat. 494, 854–61. This limitation is now found in two related sections of the code. In § 512(a)(3)(E), the relevant language imposes this limitation on income that can be excluded as exempt function income:

a set-aside for any purpose specified in clause (ii) of subparagraph (B) may be taken into account under subparagraph (B) only to the extent that such set-aside does not result in an amount of assets set aside for such purpose in excess of the account limit determined under section 419A ... for the taxable year [excluding post-retirement medical benefits reserves].

26 U.S.C. § 512(a)(3)(E)(i). The account limit for a VEBA's welfare benefits set-aside fund referred to in § 512(a)(3)(E)(i), excluding any reserves for post-retirement medical benefits, is defined by the relevant language of § 419A(c)(1):

Except as otherwise provided in this subsection, the account limit for any qualified asset account for any taxable year is the amount reasonably and actuarially necessary to fund—

(A) claims incurred but unpaid (as of the close of such taxable year) for [welfare] benefits referred to in subsection (a), and

(B) administrative costs with respect to such claims.

26 U.S.C. § 419A(c)(1) (2006). The VEBA's qualified asset account is the fund for providing welfare benefits to the VEBA's members and their dependents. *Id.* § 419A(a). Thus, even if certain income of a VEBA normally qualifies as exempt function income, that income, or some portion thereof, may, in some circumstances, no longer be excluded if there is a resulting excess in the qualified asset account of the VEBA, an excess over the account limit.

CNG argued that § 512(a)(3)(E)(i) permits a VEBA's investment income to be allocated and fully spent on member benefits prior to the close of the tax year, thus leaving no investment income to "result in" an excess in the VEBA's qualified asset account. *CNG I,* 84 Fed.Cl. at 331. CNG conceded that it exceeded the account limit described in § 419A(c)(1)–(2) in 2000. *Id.* at 331–32. The government argued that § 512(a)(3)(E)(i) does not permit the type of allocation of funds proposed by CNG. Instead, the government stated that " 'investment income set aside during the year can result in an amount of assets set aside in excess of the VEBA's account limit, even where the VEBA spends more money on program benefits than the investment income it earns.' " *Id.* at 332 (citation omitted). The court in *CNG I* considered the relevant statutory provisions to be ambiguous on this issue, and turned to the regulation interpreting the statute.[3]

---

**3.** As discussed *infra,* the Federal Circuit found the relevant statutory language to be "clear and

unambiguous." *CNG II,* 588 F.3d at 1379.

## 4

### 3. Regulation

In 1986, the United States Department of the Treasury, through the Internal Revenue Service (IRS), issued Treasury Regulation § 1.512(a)–5T, to explain certain changes brought about by the Tax Reform Act of 1984. *See* Income, Excise and Estate and Gift Taxes; Effective Dates and Other Issues Arising under the Employee Benefit Provisions of the Tax Reform Act of 1984, 51 Fed.Reg. 4312, 4332–33 (Feb. 4, 1986). The relevant text of the third question-and-answer portion of the regulation reads as follows:

What amount of income may a VEBA ... set aside for exempt purposes?

(a) Pursuant to section 512(a)(3)(E)(i), the amounts set aside in a VEBA ... as of the close of a taxable year of such VEBA ... to provide for the payment of life, sick, accident, or other benefits may not be taken into account for purposes of determining *exempt function income* to the extent that such amounts exceed the qualified asset account limit, determined under sections 419A(c) ..., *for such taxable year* of the VEBA.... In calculating the qualified asset account limit for this purpose, a reserve for post-retirement medical benefits ... is not to be taken into account.

(b) The exempt function income of a VEBA ... for a taxable year of such an organization, under section 512(a)(3)(B), includes: (1) Certain amounts paid by members of the VEBA ... within the meaning of the first sentence of section 512(a)(3)(B) (*member contributions* ); and (2) other income of the VEBA ... (including earnings on member contributions) that is set aside for the payment of life, sick, accident, or other benefits to the extent that the total amount set aside in the VEBA ... as of the close of the taxable year for any purpose (including member contributions and other income set aside in the VEBA ... as of the close of the year) does not exceed the qualified asset account limit for such taxable year of the organization. For purposes of section 512(a)(3)(B), member contributions include both employee contributions and employer contributions to the VEBA.... In calculating the total

amount set aside in a VEBA ... as of the close of a taxable year, certain assets with useful lives extending substantially beyond the end of the taxable year (e.g., buildings, and licenses) are not to be taken into account to the extent they are used in the provision of life, sick, accident, or other benefits. For example, cash and securities (and similar investments) held by a VEBA ... are not disregarded in calculating the total amount set aside for this purpose because they are used to pay welfare benefits, rather than merely used in the provision of such benefits. Accordingly, the unrelated business taxable income of a VEBA ... for a taxable year of such an organization generally will equal the lesser of two amounts: the income of the VEBA ... for the taxable year (excluding member contributions); or, the excess of the total amount set aside as of the close of the taxable year (including member contributions, and excluding certain assets with a useful life extending substantially beyond the end of the taxable year to the extent they are used in the provision of welfare benefits) over the qualified asset account limit (calculated without regard to the otherwise permitted reserve for post-retirement medical benefits) for the taxable year.

26 C.F.R. § 1.512(a)–5T (2011).

Because the court found little guidance in the legislative history of the statutory restrictions placed on exempt function income, the court in *CNG I* gave deference to this regulation, even though the regulation was a temporary, interpretative regulation. 84 Fed.Cl. at 333–34. The court did not consider CNG's argument that the regulation was invalid, because this argument was not presented until oral argument was held. *Id.* at 335 n. 5. The court ruled that the regulation was unambiguous and that § 1.512(a)–5T conclusively supported the government's interpretation of the Code. *Id.* at 336. In doing so, this court distinguished and disagreed with a decision of the United States Court of Appeals for the Sixth Circuit, *Sherwin–Williams Co. Employee Health Plan Trust v. Commissioner,* 330 F.3d 449 (6th Cir.2003) (*Sherwin–Williams* ). *CNG I,* 84

Fed.Cl. at 337–38. Because CNG relied solely on its faulty interpretation of the Code and presented no evidence that CNG's tax liability was less than the tax paid for 2000, the court granted summary judgment for the United States. *Id.* at 338–39.

## B. *CNG II*

The Federal Circuit affirmed this court's determination that a VEBA "may not avoid the limitation on exempt function income in 26 U.S.C. § 512(a)(3)(E)(i) by allocating investment income to the payment of member benefits." *CNG II,* 588 F.3d at 1377–78. In doing so, the appeals court rejected CNG's argument that "it was not obligated to pay tax on its investment income because it had spent that income on member benefits during the year." *Id.* at 1378. Instead, the court agreed with the government that "because CNG's investment income caused its total fund balances to exceed the statutory account limit, that investment income cannot be classified as exempt function income." *Id.* at 1379. The crucial issue in *CNG II* was whether CNG's investment income, in light of 26 U.S.C. §§ 419A(c), 512(a)(3)(E)(i), caused an excess in the VEBA's total fund balances, despite the fact that an even greater amount of money was spent on member benefits that tax year. *Id.*

### 1. Statute

The Federal Circuit found that the relevant statutory language was "clear and unambiguous." *CNG II,* 588 F.3d at 1379 (referencing 26 U.S.C. § 512(a)(3)(E)). Because the plain meaning of the term "result in" is the same as "cause," the appeals court concluded that because "CNG's account overage was caused by, or occurred as a consequence of, the investment income it made in 2000[,] ... that investment income was not tax-exempt." *Id.* at 1379–80 (referencing § 512(a)(3)(E)(i)). As to CNG's argument that the investment income caused no account overage because it was spent on member benefits, the court noted that because money is fungible, "CNG cannot avoid taxation by claiming that it spent money from investment income, rather than money from some other source, on member benefits." *Id.* at 1380. Indeed, the court noted that the

statute does not contain a requirement that "a VEBA's investment income can result in a year-end account overage only to the extent that the actual dollars in the account at year end are directly traceable to income made on investments." *Id.*

In addition to the statutory text, the Federal Circuit found support for its interpretation of the Code in the legislative history of § 512(a)(3)(E)(i). The appeals court found that Congress wished "to limit the extent to which a VEBA could deduct employer contributions and ... to limit the extent to which a VEBA could set aside income on a tax-free basis." *CNG II,* 588 F.3d at 1380. Thus, the court rejected CNG's allegation that "a VEBA could avoid tax on its investment income simply by asserting that it had spent this income—rather than income from employee and employer contributions—on member benefits during the relevant tax year." *Id.*

▇ It is important to note that in this case, the United States Court of Federal Claims is bound by the Federal Circuit's holdings in *CNG II.* As the Federal Circuit has reminded this court,

> the Court of Federal Claims may not deviate from the precedent of the United States Court of Appeals for the Federal Circuit any more than the Federal Circuit can deviate from the precedent of the United States Supreme Court. Trial courts are not free to make the law anew simply because they disagree with the precedential and authoritative analysis of a reviewing appellate court.

*Crowley v. United States,* 398 F.3d 1329, 1335 (Fed.Cir.2005). Thus, three key holdings of *CNG II* regarding the Code bind this court: (1) the language of 26 U.S.C. § 512(a)(3)(E) is clear and unambiguous; (2) a VEBA may not allocate investment income to the payment of member benefits and thus avoid taxation of that income, if there is an excess over the VEBA's statutory account limit for that tax year; and, (3) legislative history supports the government's and the Federal Circuit's interpretation of the Code.

### 2. Regulation

Although the Federal Circuit found that the Code was unambiguous as to the treatment of a VEBA's investment income, the court commented that "even if [§ 512(a)(3)(E)(i) ] were not [unambiguous], we would be compelled to accord deference to the Treasury's reasonable interpretation of the statute." *CNG II*, 588 F.3d at 1380. The appeals court then discussed 26 C.F.R. § 1.512(a)–5T, which explains that "a VEBA will pay tax on the lesser of: (1) its investment income, and (2) the amount by which its set aside exceeds the statutory account limit." *Id.* at 1381. The court noted, in particular, that the regulation "does not provide for the allocation of income from a particular source to a particular expense." *Id.* The Federal Circuit concluded that the regulation's formula does not permit "a VEBA [to] avoid taxation on its investment income by allocating that income to the payment of member benefits during the tax year." *Id.*

The Federal Circuit, like this court, did not consider CNG's argument that 26 C.F.R. § 1.512(a)–5T was "procedurally and substantively invalid," because this argument was untimely presented and waived. *CNG II*, 588 F.3d at 1381. The appeals court noted, however, that CNG had previously attempted to rely on the regulation in its arguments before this court. *Id.* Irrespective of the validity of the regulation, however, this court is bound by the Federal Circuit's holding that 26 C.F.R. § 1.512(a)–5T is a reasonable interpretation of § 512(a)(3)(E)(i).

### 3. Section 419 and *Sherwin–Williams*

The two final arguments presented by CNG on appeal were also rejected by the Federal Circuit in *CNG II*. First, CNG argued that 26 U.S.C. § 419 (2006) contains an ordering rule that allocates investment income as the first source of funds to pay a VEBA's member benefits, and that this rule should be applied to § 512(a)(3)(E)(i). *CNG II*, 588 F.3d at 1381. The Federal Circuit held that sections 419 and 512 deal with "fundamentally different problems," and that "there is nothing to indicate that section 419's alleged ordering rule should be applied

to section 512." *Id.* The appeals court concluded that § 419 does not indicate that "in determining the amount of tax-exempt set aside available under section 512(a)(3)(E)(i), investment income must be the first source used to pay member benefits." *Id.* at 1382.

Second, CNG suggested that *Sherwin–Williams* had correctly interpreted the Code in holding that the limits on a VEBA's exempt function income are based on accumulated, not set aside, funds. *CNG II*, 588 F.3d at 1382. Like this court, the Federal Circuit both distinguished and disagreed with *Sherwin–Williams*. Unlike *Sherwin–Williams*, where the parties had stipulated to the allocation of investment income for the payment of the VEBA's administrative costs, *CNG II* decided "whether a VEBA can avoid taxation by purporting to spend income from investments, rather than income from some other source, in providing member benefits." *Id.* The appeals court also specifically disagreed with the Sixth Circuit's application of the concept of "accumulated funds" to a statutory provision where the term "accumulated" does not appear, and specifically noted that the Sixth Circuit had ignored the formula provided in 26 C.F.R. § 1.512(a)–5T. *Id.* Thus, precedent binding on this court has rejected *Sherwin–Williams* as persuasive authority.

## II. Indistinguishable Facts[4]

Like CNG, plaintiff Northrop Corporation Employee Insurance Benefit Master Trust (Northrop) is a VEBA, under 26 U.S.C. § 501(c)(9). Pl.'s Facts ¶ 1; Pl.'s Mot. at 2. Northrop "operates ... for the purpose of funding permissible welfare benefits for collectively-bargained and other employees and retirees (and their beneficiaries) of Northrop Grumman Corporation and its subsidiaries, such as medical, dental, disability, life insurance and accident benefits." Compl. ¶ 24. Also like CNG, Northrop seeks an income tax refund based on its claim that it overstated its UBTI and overpaid its taxes, because the investment income it reported to the IRS should have been excluded as exempt function income. *Id.* ¶¶ 30–31.

4. The facts reported here are undisputed in all aspects material to the parties' cross-motions.

In Northrop's case, the tax years in question are 1999 through 2003, and the total refund amount sought is $23,977,214, plus interest. *Id.* ¶¶ 31–32. In each of the relevant tax years, Northrop's reported investment income was less than its expenditures for member benefits. *See* Pl.'s Facts ¶¶ 8, 11, 17, 20, 26, 29, 35, 38, 44, 47. In addition, "[a]t the end of each year, [Northrop's] assets exceeded the account limit under section 419A by an amount greater than the investment income for the year." Pl.'s Mot. at 2. The parties have also stipulated for the purposes of this proceeding that Northrop's account limit under 26 U.S.C. § 419A, not including any reserve for post-retirement medical benefits, may be presumed to be zero. Stip. of Fact, filed Sept. 21, 2010; Def.'s Mot. at 9.

It is undisputed that Northrop did not assert that 26 C.F.R. § 1.512(a)–5T was invalid in its refund claims presented to the IRS. Pl.'s Resp. to Def.'s Facts ¶ 23. Indeed, that regulation was cited as one of the authorities relied upon by plaintiff as it pursued its refund claims. *Id.* ¶ 22. No other facts are essential to the court's resolution of the parties' cross-motions.

## DISCUSSION

### I.   Standard of Review for RCFC 56

"[S]ummary judgment is a salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir.1987) (internal quotations and citations omitted). The moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(c)(1). A genuine issue of material fact is one that could change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A summary judgment "motion may, and should, be granted so long as whatever is before the ... court demonstrates that the standard for the entry of summary judgment, as set forth in

Rule 56(c), is satisfied." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### II.   Analysis

Disputes over tax liability are well-suited to disposition on cross-motions for summary judgment when the outcome turns on the proper interpretation of the Code, rather than on disputes of fact. *See Dana Corp. v. United States*, 174 F.3d 1344, 1347 (Fed.Cir. 1999) (stating that summary judgment was appropriate in that tax refund suit because issues of law were the only disputed issues before the trial court). Here, there are no material facts in dispute. The court turns to plaintiff's arguments which have been mustered in an attempt to challenge the binding precedent of *CNG II*.

### A.   Plaintiff's Arguments that *CNG II* Was Wrongly Decided

Although this court cannot overrule *CNG II*, the court lists here plaintiff's arguments challenging the holdings of the Federal Circuit. First, plaintiff contests the appeals court's interpretation of the term "result in," the statutory term that is central to this tax controversy. Pl.'s Mot. at 4–23 (citing § 512(a)(3)(E)(i)). Second, plaintiff suggests that the Federal Circuit erred by rejecting the reasoning presented in *Sherwin–Williams*. *Id.* at 24. Third, plaintiff challenges the holding in *CNG II* that 26 C.F.R. § 1.512(a)–5T is a reasonable interpretation of the Code, *see CNG II*, 588 F.3d at 1380, by asserting that the regulation is "invalid because it ignores Congressional intent on the meaning of § 512(a)(3)(E)(i)." Pl.'s Mot. at 24. Because this court is bound by *CNG II*, the court cannot adopt an interpretation of § 512(a)(3)(E)(i) that conflicts with *CNG II*; cannot adopt the reasoning in *Sherwin–Williams* that was rejected by the Federal Circuit; and cannot consider 26 C.F.R. § 1.512(a)–5T to be anything but a reasonable interpretation of § 512(a)(3)(E)(i).

### B.   Plaintiff's Arguments that 26 C.F.R. § 1.512(a)–5T is Invalid and Arbitrary and Capricious

This court is bound by *CNG II* and its holding that § 512(a)(3)(E)(i) is clear and

unambiguous, so any arguments regarding the invalidity or arbitrariness of 26 C.F.R. § 1.512(a)–5T are fundamentally immaterial to the resolution of plaintiff's claims in this case.[5] Because the statute is clear and unambiguous under precedent binding in this circuit, the regulation's status, however firm or unfirm, would not alter the analysis. The court, for the sake of completeness, here lists the arguments plaintiff has raised to challenge the authority of 26 C.F.R. § 1.512(a)–5T.

Plaintiff argues that the regulation is invalid because the agency "provided no explanation of the reasoning that led the IRS and Treasury to adopt the interpretation of section 512(a)(3)(E)(i) reflected in the regulation." Pl.'s Mot. at 24. Northrop also argues that the regulation is invalid because its issuance violated the notice and comment requirements of the Administrative Procedure Act, 5 U.S.C. § 553 (2006). Pl.'s Mot. at 27. In addition, the parties dispute the deference to be afforded the regulation, and whether the "substantial variance" rule permits plaintiff to challenge the validity of the regulation in this suit. None of these arguments is material to this court's task of applying § 512(a)(3)(E)(i) to the undisputed facts of this case. The court sees no need to indulge in an analysis of the status of 26 C.F.R. § 1.512(a)–5T, or of plaintiff's right to bring a challenge to the regulation in this court, that would be pure *dicta.*

### C.  Application of Precedent to the Undisputed Facts of this Case

 Northrop argues, as did CNG, that § 512(a)(3)(E)(i) permits a VEBA to allocate its investment income to the payment of member benefits and to avoid taxes on that investment income. *See* Pl.'s Mot. at 2 (stating that plaintiff "contends investment income spent on benefits in the year the income is earned does not result in assets set aside at the end of the year"). It is undisputed that "[a]t the end of each [relevant tax] year, [Northrop's] assets exceeded the account limit under section 419A by an amount greater than the investment income for the

year." *Id.* Applying *CNG II* to these facts, Northrop's "account overage was caused by, or occurred as a consequence of, the investment income it made in [those tax years, and] under the plain meaning of section 512(a)(3)(E)(i) that investment income was not tax-exempt." 588 F.3d at 1379–80. Plaintiff's tax refund claims are foreclosed by binding precedent and must fail.

### CONCLUSION

A voluntary employees' beneficiary association (VEBA) may not avoid the limitation on exempt function income in 26 U.S.C. § 512(a)(3)(E)(i) merely by allocating, or purporting to allocate, investment income toward the payment of welfare benefits during the course of the tax year. Under precedent binding in this circuit, Northrop is not entitled to the tax refunds it seeks. Because there are no issues of material fact and defendant is entitled to judgment as a matter of law, defendant's motion for summary judgment is granted.

Accordingly, it is hereby **ORDERED** that

(1) Plaintiff's Motion for Summary Judgment, filed November 23, 2010, is **DENIED;**

(2) Defendant's Cross–Motion for Summary Judgment, filed January 24, 2010, is **GRANTED;**

(3) The Clerk's Office is directed to **ENTER** final judgment in favor of defendant, **DISMISSING** the complaint, with prejudice;  and

(4) Each party shall bear its own costs.

---

**5.**  "Defendant does not fault Northrop for making its record in this Court, so that it may make the same arguments later on appeal."  Def.'s Reply at 2.